547 So.2d 232 (1989)
Douglas GARRICK, Appellant,
v.
WILLIAM THIES & SONS and Poe Risk Management, Appellees.
No. 88-1054.
District Court of Appeal of Florida, First District.
July 13, 1989.
Rehearing Denied August 29, 1989.
*233 Barbara B. Wagner, Deerfield Beach, for appellant.
Michael W. Baker of Walton, Lantaff, Schroeder & Carson, Ft. Lauderdale, for appellees.
PER CURIAM.
In this workers' compensation case, claimant timely appeals an order by the deputy commissioner (dc) denying temporary partial and wage loss benefits. Because we find that the dc erred in not taking claimant's job search into account in making his determination of entitlement to wage loss benefits, we reverse.
Claimant was a driver/delivery person for the employer, a beer, wine and liquor distributor. On December 11, 1986, claimant fell while making a delivery and injured his knee, which injury required surgery. The parties to this appeal stipulated as to the compensability of claimant's injury.
In late December of 1986, claimant's sales manager notified him that his last paycheck would be withheld due to a discrepancy between the amount of money claimant collected for his deliveries and the amount he turned in to the company. Claimant agreed to contact the sales manager concerning the matter after his return from an out-of-town trip over the Christmas/New Year's holiday period. Apparently, for whatever reason, claimant and his sales manager never got together as anticipated and on February 10, 1987, claimant received a letter terminating his employment for failure to follow company rules with respect to collection and remission of money for merchandise delivered. Specifically, the termination letter alluded to the sum of $454.70 allegedly collected but not remitted.
Two days after he received his termination notice, claimant was released by his treating physician, Dr. Kanell, to return to work. The only limitations placed on claimant by Dr. Kanell were restrictions against stooping and squatting. At his deposition, the doctor testified that claimant reached maximum medical improvement (MMI) on March 6, 1987 with a 5% permanent impairment of his lower right extremity.
Thereafter, claimant submitted a request for temporary partial disability benefits from February 6 until March 5. This request was accompanied by a job search form as was claimant's request for wage loss benefits during the remainder of March. Claimant requested wage loss for the month of April and submitted with his request check stubs reflecting earnings from a business called Anro Metal Manufacturing. Claimant apparently left his job at Anro, requested wage loss benefits and submitted a work search form for the month of May, and found another job in June. He continued this job through February 29, 1988, the date of the hearing before the dc and continued to submit wage loss forms reporting his earnings.
At the hearing, the claimant requested temporary partial disability benefits (TPD) *234 from February 6, 1987 until MMI on March 6, 1987. Wage loss benefits were requested for the period following MMI. The employer/carrier (e/c) defended on the ground that employment within claimant's restrictions was available with the employer but claimant was terminated for reasons unrelated to his injury. E/C argued that claimant's conversion of the employer's funds constituted constructive refusal of employment and voluntary limitation of income. Claimant countered by arguing that his injury prevented him from returning to explain the discrepancy between collection and remission and, thus, his injury caused his termination. In any event, the hearing was largely devoted to whether or not claimant was guilty of stealing from his employer.
A month after the hearing, the dc entered his order denying the claim for TPD and wage loss. He found that the e/c's argument was persuasive; that claimant had indeed stolen from his employer and that there was no connection between claimant's wage loss claim and his injury. This appeal followed.
To be entitled to wage loss benefits, a claimant must show that his compensable physical limitation is "an element in the causal chain resulting in or contributing to the wage loss." STC/Documation v. Burns, 521 So.2d 197, 198 (Fla. 1st DCA 1988). Quoting City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984). Since wage loss involves a periodic inquiry, claimant's failure to make the required showing for one period does not preclude wage loss benefits for subsequent periods. See Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982). This has been applied to situations in which a claimant returns for a successful period of postinjury employment and is subsequently fired or suspended for reasons unrelated to his injury. See Sparks v. Aluma Shield Industries, 523 So.2d 680 (Fla. 1st DCA 1988) (claimant justifiably fired for insubordination); Western Union Telegraph Company v. Perri, 508 So.2d 765 (Fla. 1st DCA 1987) (claimant suspended for insubordination); Johnson v. Super Food Services, 461 So.2d 169 (Fla. 1st DCA 1984) (claimant terminated for excessive absenteeism). The proper approach in such cases was described in Whalen v. U.S. Elevator, 486 So.2d 670, 671 (Fla. 1st DCA 1986):
Whatever temporary period of unemployment might
be attributable solely to unrelated dislocation would logically end upon proof of prima facie injury connection by continued wage loss after a good faith job search by one whose employment status has been permanently altered by a compensable impairment which affects his competitive position in the labor market.
In the case at hand, the dc declined to take claimant's job search into account and denied all benefits based upon claimant's termination for conversion. Although he cited the authority mentioned above, the dc concluded that it was inapplicable because the instant case involved termination for wrongful conversion or theft. In his order, he stated:
These cases stand for the proposition that entitlement to wage loss benefits is determined monthly and failure to qualify for one period will not necessarily include (sic) benefits for any subsequent period. No case has been cited to the court where an individual was fired for wrongful conversion or theft. The legal premise that wage loss is a month-to-month situation is reasonable where a person is terminated not only because of general economic conditions but where even such things as absenteeism or insubordination or disputes with an employer are involved... . Where an employee acts with malice or in a mean spirited or, at the very minimum, destructive manner toward an employer, the employer should not be required to pay the wage loss benefits where the employer would have otherwise retained the employee at full wages. (Emphasis added)
While we hold no brief for employees who steal from employers, we can find no authority under Florida law to support the distinction found by the dc. He apparently was persuaded to make such a finding by the e/c's argument urging application of a rule enunciated by the Michigan Court of *235 Appeals in Calvert v. General Motors Corp., 120 Mich. App. 635, 327 N.W.2d 542 (1982), the essence of which rule is that if an employee is terminated for "just cause" involving "voluntary acts", he is not entitled to workers' compensation benefits. Although it is unclear whether Calvert was based upon a specific Michigan statute, we are aware of no provision in Florida law that would support a similar result. Whether to bar the employee who acts with "malice" or in a "mean spirited" or "destructive" way toward his employer from workers' compensation benefits is a matter to be resolved in the political forum. Absent such a resolution, however, the distinction urged by the dc would undermine the month-to-month nature of wage loss and would hinge eligibility for such benefits upon a highly subjective determination concerning the degree of a claimant's culpability.
Accordingly, we reverse the order appealed from and remand with instructions to the dc to take all factors, including claimant's job search, into account in determining his eligibility for TPD and wage loss benefits for each period in which such benefits are requested. We stress, however, that our instructions on remand do not require a particular result.
Reversed and remanded with instructions.
BOOTH, JOANOS and MINER, JJ., concur.