727 So.2d 968 (1998)
VENCOR HOSPITAL and Sentry Claims Service, Appellants,
v.
Kelly Denise AHLES, Appellee.
No. 98-1030.
District Court of Appeal of Florida, First District.
December 11, 1998.
Peter H. Dubbeld and Edwin Kravitz, Jr., of Dubbeld & Kaelber, P.A., St. Petersburg, for Appellants.
David F. Koenig of Barbas, Weed, Koenig, Nunez & Wheeley, Tampa, for Appellee.
PADOVANO, Judge.
Vencor Hospital and Sentry Claims Service, the employer and carrier, appeal a final order awarding temporary partial disability benefits to the claimant, Kelly Denise Ahles. We conclude that the Judge of Compensation Claims erred in awarding disability benefits, because the claimant failed to establish that her loss of earning capacity was caused by a disability as defined in the Workers' Compensation Statute. Therefore, we reverse.
The claimant was injured on September 11, 1995, while she was performing her duties as a licensed practical nurse. She was attempting to restrain a disoriented patient when the patient grabbed her left thumb bending it backwards toward her wrist. At first, the injury appeared to be a sprain, but the swelling and pain persisted, and the claimant eventually consulted an orthopedic hand surgeon who diagnosed the condition as carpal tunnel syndrome. The doctor recommended surgery but the claimant decided to postpone that option until she could determine whether her hand would heal on its own.
After the injury, the claimant worked in the hospital in different jobs within her physical limitations. In December 1996 she was working in a full-time light duty position as a patient care advocate, and then in March 1997 she accepted a position as a department manager of social services. While she was employed in this position, the claimant elected to have the surgery the doctor had originally recommended. She was out briefly to recuperate from the surgery and returned to work on April 29, 1997.
The claimant continued in her position as a social services manager until June 10, 1997, when she was terminated for stealing and forging a hospital check in the amount of $74,307.00. The evidence shows that the claimant was capable of performing her job as a social services manager and that she would not have been terminated from that position had she not stolen the check.
Despite the claimant's termination, the Judge of Compensation Claims ordered the employer and carrier to pay temporary partial disability benefits from June 10, 1997, until October 21, 1997, the date the claimant reached maximum medical improvement. The amount of the partial disability was computed by comparing the applicable percentage *969 of the claimant's average weekly wage against an assumed total loss of earning capacity. In support of this decision, the judge reasoned that the 1994 revision of the Workers' Compensation Statute contains no mechanism for reducing an award of partial disability benefits based on an employee's misconduct. As the judge explained, the 1994 revision eliminated the deemed earnings provision of the previous statute, see section 440.15(4)(b), Florida Statutes (1993), which had enabled the courts to attribute earning capacity to a worker who was underemployed or terminated for misconduct at work.
The employer and carrier argue that the claimant is not entitled to temporary partial disability benefits, because she failed to prove that her loss of earnings was caused by her disability. We agree. Although it is true the claimant lost some earning capacity as a result of the injury to her hand, that disability alone did not cause her earning capacity to drop below the statutory threshold for an award of temporary partial disability benefits.
An injured employee can recover temporary partial disability benefits only if a disability caused by a work-related injury results in a reduction in the employee's earning capacity below the level set by statute. Section 440.15(4)(a), Florida Statutes (Supp. 1994) defines the minimum level as follows:
(a) In case of temporary partial disability, compensation shall be equal to 80 percent of the difference between 80 percent of the employee's average weekly wage and the salary, wages, and other remuneration the employee is able to earn, as compared weekly; however, the weekly benefits may not exceed an amount equal to 66 2/3 percent of the employee's average weekly wage at the time of injury.
In the present case, the claimant was not receiving temporary partial disability benefits when she was working as a social services director even though her salary was reduced in that position as a result of her disability. She was earning less as a social director than she had been earning as nurse, but the difference did not bring her salary below eighty percent of her average weekly wage as a nurse, the beginning point for calculating temporary partial disability.
When the claimant was terminated for misconduct she was unemployed and had no income. At that point, the reduction in her income was enough, from a purely mathematical standpoint, to require the payment of temporary partial disability benefits. However, the reduction in the claimant's income below the minimum statutory level was caused by her termination for misconduct, not her disability.
The 1994 revision to section 440.15(4), Florida Statutes removed the deemed earnings provision which had previously enabled the courts to attribute earnings to an employee terminated for misconduct. However, the 1994 revision did not change the fact that temporary partial disability benefits are "compensation for disability." Section 440.15, Florida Statutes (Supp.1994)(emphasis supplied). Section 440.02(11), Florida Statutes (Supp.1994), defines the term "disability" as the "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury." Consequently, an employee must still prove a causal connection between a work-related injury and a resulting wage loss to recover temporary partial disability benefits. See e.g. Betancourt v. Sears Roebuck & Co., 693 So.2d 680 (Fla. 1st DCA 1997).
Moreover, section 440.15(4), Florida Statutes, (Supp.1994) provides that temporary partial disability must be computed as a percentage of the difference between the employee's average weekly wage and the "salary, wages, and other remuneration the employee is able to earn" after the disability. (emphasis supplied). Thus, the current statute continues to employ the concept of earning capacity, and not actual earnings, to measure the extent of a partial disability. In the present case, the judge failed to account for the fact that the claimant had a substantial earning capacity despite her termination by the hospital.
In summary, we conclude that the Judge of Compensation Claims erred in awarding the claimant temporary partial disability benefits *970 because the claimant failed to show that her loss of earnings was caused by her disability.
Reversed.
BOOTH, J., concurs.
BENTON, J., concurs with opinion.
BENTON, Judge, concurring.
The judge of compensation claims relied on our opinion in Garrick v. William Thies & Sons, 547 So.2d 232, 234 (Fla. 1st DCA 1989), where we said:
To be entitled to wage loss benefits, a claimant must show that his compensable physical limitation is "an element in the causal chain resulting in or contributing to the wage loss." STC/Documation v. Burns, 521 So.2d 197, 198 (Fla. 1st DCA 1988). Quoting City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984). Since wage loss involves a periodic inquiry, claimant's failure to make the required showing for one period does not preclude wage loss benefits for subsequent periods. See Regency Inn v. Johnson, 422 So.2d 870 (Fla. 1st DCA 1982). This has been applied to situations in which a claimant returns for a successful period of post-injury employment and is subsequently fired or suspended for reasons unrelated to his injury. See Sparks v. Aluma Shield Industries, 523 So.2d 680 (Fla. 1st DCA 1988) (claimant justifiably fired for insubordination); Western Union Telegraph Company v. Perri, 508 So.2d 765 (Fla. 1st DCA 1987)(claimant suspended for insubordination); Johnston v. Super Food Services, 461 So.2d 169 (Fla. 1st DCA 1984)(claimant terminated for excessive absenteeism).
At issue here are temporary partial disability benefits under statutory provisions that also look to whether a compensable physical limitation contributes to wage loss.
To be eligible for indemnity benefits, an employee must prove that a covered injury caused a change in employment status that entitled her to benefits. See Thompson v. City of Jacksonville, 654 So.2d 1178, 1180 (Fla. 1st DCA 1995). Here neither the change from working as a nurse to working as a patient care advocate nor the subsequent shift to working as the social services department manager entailed sufficient diminution in income to entitle Ms. Ahles to temporary partial disability benefits.
The fact that she subsequently experienced a change in job status that left her without income does not mean that the wrist injury caused any loss of income. See Thompson, 654 So.2d at 1180. The immediate cause of her unemployment was wholly unrelated to the industrial accident. See, e.g., Sparks v. Aluma Shield Indus., 523 So.2d 680 (Fla. 1st DCA 1988); Lamazares v. Rinker Southeastern Materials Corp., 519 So.2d 34 (Fla. 1st DCA 1987); Western Union Tel. Co. v. Perri, 508 So.2d 765 (Fla. 1st DCA 1987); Johnston v. Super Food Servs., 461 So.2d 169 (Fla. 1st DCA 1984); Citrus Central v. Parker, 423 So.2d 610 (Fla. 1st DCA 1982); but see Ringling Bros. Barnum and Bailey Circus v. O'Blocki, 496 So.2d 947 (Fla. 1st DCA 1986).
The judge of compensation claims found that Ms. Ahles' employment was the major contributing cause of her injury and concluded that she was entitled to temporary partial disability benefits for reasons he set out, as follows:
5. The issue of entitlement to compensation benefits after termination for cause has been met by the 1st District Court of Appeal on several occasions. The case most closely on point is Garrick v. William Thies & Sons, 547 So.2d 232 (Fla. 1DCA 7/13/89), a case with a 12/11/[8]6 date of accident. In that case the claimant had returned to work following surgery to his knee and prior to MMI and was terminated for allegedly failing to turn in the sum of $454.70 collected from a customer. The then Deputy Commissioner denied temporary partial compensation benefits on the theory of Calvert v. General Motors Corp., 120 Mich.App. 635, 327 N.W.2d [542] (1982) and held that Garrick was terminated for theft and there was therefore no connection between the wage loss claim and his injury. The Court reversed, stating that "While we hold no brief for employees who steal from employers, we can *971 find no authority under Florida law to support the distinction found by the d.c.". The Court stated that the issue presented was one for the Legislature.
6. Subsequent to Garrick, the Legislature did enact language in F.S. § 440.15(4) relating to termination under these circumstances. Under the provisions then installed, compensation would be denied for 3 consecutive bi-weekly periods (later reduced to 2 bi-weekly periods). This language was, however, removed from the statute in the 1994 revision of F.S. ch.440, along with the requirement for job search and bi-weekly application for benefits. The statute would, therefore, seem to have reverted to essentially the same as it was at the time of the Garrick decision. As such, I find no provision in the law that would preclude the claimant's entitlement to the claimed benefit. She clearly was under physical limitations that prevented her return to her normal and usual work as an LPN, the work she was doing at the date of injury. As set out in Garrick, []To be entitled to wage loss benefits, a claimant must show that his compensable physical limitation is "an element in the causal chain resulting in or contributing to the wage loss". It can not be denied that the physical limitations were an "element" in this claimant's wage loss, even though there were most probably other "elements" stemming from the apprehension for this theft that were also very active. While this Court, just as the 1st District Court of Appeal, "Holds no brief for employees who steal from their employers", I can find no basis under the law that would deny this benefit. While this employer's refusal to pay compensation benefits under these circumstances is understandable, the wisdom of the Legislature in not so applying the law is not without merit. Certainly, a situation as grievous as this one could be agreed upon by all as deserving of denial of benefit. If such were, however, the law, the instances in which the application would be urged would, in the main, be much less clear applications and would turn this Court into a criminal court or one in which swearing matches as to whether or not there was "just cause" for a termination was present, actual, or concocted for the purpose of terminating the employee's employment by either the employer or the employee.
If the record contained competent substantial evidence to support the finding that the injury that arose out of the industrial accident caused Ms. Ahles' compensable wage loss, affirmance would be in order. But the record is devoid of such evidence.
Indemnity benefits are not automatically foreclosed when an injured employee loses a job for reasons unrelated to her injury, as the judge of compensation claims correctly observed. But the claimant has the burden to prove that the compensable injury caused continued unemployment. See Custom Architectural Metals v. Bradshaw, 623 So.2d 804, 807 (Fla. 1st DCA 1993); Publix Supermarket, Inc. v. Hart, 609 So.2d 1342, 1344 (Fla. 1st DCA 1992); Garrick, 547 So.2d at 235; Sparks, 523 So.2d at 680-81; Johnston, 461 So.2d at 171; Williams Roofing, Inc. v. Moore, 447 So.2d 968 (Fla. 1st DCA 1984). Although no longer statutorily required as a precondition to receiving temporary indemnity benefits, an unsuccessful job search may help provide such proof. See Nickolls v. University of Fla., 606 So.2d 410, 412 (Fla. 1st DCA 1992).
"Whatever temporary period of unemployment might be attributable solely to unrelated dislocation would logically end upon proof of a prima facie injury connection by continued wage loss after a good faith job search by one whose employment status [capacity to earn wages] has been ... altered by a compensable impairment which affects his competitive position in the labor market." Whalen v. U.S. Elevator, 486 So.2d 670, 671 (Fla. 1st DCA 1986). Here, however, Ms. Ahles did not look for another position after her discharge. While medical evidence may also be probative and did show here that Ms. Ahles was unable to work as a nurse during the period in question, no medical evidence indicated that she could not perform work of the kind she did for more than a year and a half after she injured her wrist.
The record refutes any suggestion that the disability arising out of her industrial accident *972 destroyed her wage-earning capacity. The wages Ms. Ahles received for her work first as a patient care advocate, then as a social services department manager, evinced without contradiction the amount of "remuneration the employee is able to earn." § 440.14(4)(a), Fla. Stat. (1995). Since that amount did not entitle her to indemnity benefits, the award of such benefits must be reversed.