PER CURIAM.
 

 Wyeth/Pharma Field Sales, the employer, and Gallagher Bassett, its servicing agent (collectively E/SA), challenge an order of the Judge of Compensation Claims (JCC) awarding Vivian Toscano (Claimant) temporary partial disability (TPD) benefits. The E/SA argues this was error because Claimant failed to establish a “causal connection” between her compensable injuries and her subsequent loss of wages. We disagree, and affirm.
 

 Background
 

 Before her workplace accident, Claimant was employed as a pharmaceutical sales representative earning $1,327.57 per week. This job required Claimant to engage in regular walking, bending, lifting, pushing, and pulling. On September 24, 2007, Claimant slipped and fell while performing work in the course and scope of her employment, resulting in compensable injuries to her hip, shoulder, elbow, left ankle and knee, and lumbar and cervical spine.
 

 Claimant received remedial medical care and treatment for these injuries, and during her recovery she was restricted by her authorized physician from performing the functions of her pre-injury job. Nevertheless, Claimant was medically cleared for sedentary and, later, part-time sedentary employment, although she was still healing from her injuries. Because Claimant was unable to perform her pre-injury employment, she no longer earned the salary she was previously capable of earning; instead, Claimant’s earnings were reduced to $0.
 

 Although the Employer accepted com-pensability of Claimant’s accident and injuries, it did not offer or secure modified work appropriate to her restrictions or furnish any reemployment services to assist her in finding alternate work during her period of medical recovery. While Claimant was still healing from her com-pensable injury, and still precluded from performing her pre-injury job, her employment was officially terminated as the consequence of a permanent lay-off involving Claimant and approximately 1,200 other employees. The E/SA then denied TPD benefits on the basis that Claimant’s loss of earnings was not causally related to her workplace injuries but, rather, was caused by the corporate downsizing.
 

 The E/SA contested Claimant’s petition for TPD benefits on the ground that she was capable of working and voluntarily limiting her income. At the ensuing evi-dentiary hearing, the E/SA stipulated Claimant had not reached maximum medical improvement (MMI), and did not introduce any evidence suggesting Claimant
 
 *798
 
 had refused suitable employment offered to or procured for her. Moreover, the E/SA did not introduce any evidence suggesting Claimant was terminated from post-injury employment for misconduct, or left this employment for unjustifiable reasons. Rather, the E/SA insisted Claimant could not satisfy her burden of proving a causal relationship between her injuries and the subsequent loss of income, because she failed to engage in a job search during her period of medical recovery. The JCC disagreed and concluded that, by proving the incapacity to perform her pre-injury job, which resulted in a direct reduction of earnings sufficient to qualify her for TPD benefits, Claimant met her burden of proving the requisite causal connection. The JCC also noted that the E/SA had not informed Claimant that it expected her to perform a job search. The JCC determined that, to the extent the workers’ compensation statute requires a job search, the E/SA had waived such a requirement by failing to put Claimant on notice of its expectations.
 

 Analysis
 

 Although resolution of this issue could be achieved by simply noting that competent substantial evidence supports the JCC’s finding that Claimant established a causal connection between her injuries and loss of wages, such a resolution would do little to clarify the legal standard applicable to the payment of TPD benefits — an issue which we observe remains a source of confusion. Indicative of this uncertainty is the E/SA’s ability to make the following seemingly irreconcilable assertions which are neither disingenuous nor obtuse under current law:
 

 It is understood that a specific work search is not necessarily a requirement for entitlement to TPD under the law in effect on Claimant’s date of accident in 2007.
 

 and
 

 Accordingly, it is clear, that evidence of an unsuccessful search is needed when determining whether a Claimant has met her burden of proof that the wage loss is due to her injuries.
 

 Accordingly, we write to clarify the legal standard governing the payment of TPD benefits pursuant to section 440.15(4), Florida Statutes (2007).
 

 Distinct from temporary
 
 total
 
 disability (TTD) benefits, an employee’s entitlement to temporary
 
 partial
 
 disability benefits is predicated on the ability to work, albeit with restrictions.
 
 See
 
 section 440.15(4)(a)-(e), Florida Statutes (2007) (providing TPD benefits are payable only when employee has been released to perform restricted work);
 
 cf.
 
 section 440.15(2)(a) (stating TTD benefits are payable for disability “total in character but temporary in quality”). In
 
 Holiday Care Center v. Scriven,
 
 418 So.2d 322, 324 (Fla. 1st DCA 1982), this court explained that TPD benefits are not intended to compensate for total disability; rather, TPD benefits compensate an employee who has been returned to some level of restricted work, but is still recovering from the effects of her injury and has been temporarily displaced from her pre-injury employment and wages:
 

 [I]t does not necessarily follow from this worker’s recovery of physical ability to work that she also miraculously recovered, by virtue of the doctor’s pronouncement, an immediate ability to earn from work the same “salary, wages, and other remuneration” she earlier lost by this industrial accident. At that point she was a worker without a job, still short of [MMI], still injured and recovering, and in that condition still partially disabled both physically and economically due to “personal injury ...
 
 *799
 
 by accident arising out of and in the course of employment.”
 

 Id.
 

 The Statute
 

 Under the current TPD statute, benefits are payable “if overall MMI has not been reached” and the medical conditions resulting from the accident create
 
 restrictions
 
 not an absolute prohibition, on the injured employee’s ability to return to work, as argued by the E/SA. § 440.15(4)(a), Fla. Stat. (2007); see
 
 also
 
 § 440.02(13) (defining “disability” as the “incapacity to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.”). Furthermore, the statute provides for a comparison between an employee’s average weekly wage and the salary, wages, and other remuneration the employee
 
 is able to earn
 
 post-injury, as compared to weekly, when calculating TPD. Thus, TPD benefits are calculated by the carrier based on the extent to which the employee’s post-injury earnings fall below his pre-injury average weekly wage. If an employee does not have post-injury earnings, the first installment of TPD benefits “is due no later than fourteen ... days after the date of the employee’s medical release,” based on $0 earnings. Fla. Admin. Code R. 69L-3.01915(2)(a). Thus, a claimant need only prove a causal connection between the injury and the loss of income.
 

 Proving a Causal Relationship Between Injury and Loss of Earnings
 

 Generally, the test used to determine whether physical limitations after an accident are a contributing causal factor to a loss of wages is whether a claimant’s capabilities allow her to return to and adequately perform her prior job with the employer, and whether the workplace injury caused a change in employment status resulting in a reduction of her wages below 80% of her pre-injury average weekly wage.
 
 See
 
 section 440.15(4)(a), Florida Statutes (providing compensation shall be equal to 80 percent of the difference between 80 percent of the employee’s average weekly wage and the salary, wages, and other remuneration the employee is able to earn post-injury, as compared to weekly);
 
 see also Interim Servs. v. Levy,
 
 843 So.2d 915, 916-17 (Fla. 1st DCA 2003) (holding, to establish causal relationship between injury and wage loss, a claimant can show that her capabilities preclude adequate performance of her prior job);
 
 accord Thompson v. City of Jacksonville,
 
 654 So.2d 1178, 1180 (Fla. 1st DCA 1995);
 
 Burger King v. Nicholas,
 
 580 So.2d 656, 658 (Fla. 1st DCA 1991); and
 
 Superior Pontiac v. Hearn,
 
 458 So.2d 1197, 1199 (Fla. 1st DCA 1984). “A prima facie case of lost earning capacity must include a showing of a causal connection between the loss of employment at pre-accident wages and the industrial accident” (and the resulting injury(ies)).
 
 Photo Electronics Corp./WPEC v. Glick,
 
 432 So.2d 164, 165 (Fla. 1st DCA 1983). The burden “is clearly on the claimant to connect the economic disruption to the compensable” injuries.
 
 Id.
 

 Here, Claimant established to the JCC’s satisfaction that, as a result of her workplace injuries, she was unable to successfully perform the tasks of her pre-injury job, which directly resulted in a cessation of the performance of that employment and an attendant reduction of her income to $0. Obviously, this meant that she was able to earn less than 80% of her AWW. Consequently, she established prima facie entitlement to TPD benefits.
 

 Here, the E/SA argues that Claimant failed to satisfy her burden because she did not prove that her restrictions prohibited her from performing all other
 
 *800
 

 potentially available
 
 (but unspecified) employment. That standard, however, governs total, not partial, disability claims.
 
 See
 
 section 440.15(1) Florida Statutes (2007) (stating, to prove entitlement to permanent total disability benefits, employee “must establish that he or she is not able to engage in at least sedentary employment, within a 50 mile radius” of his residence);
 
 see also
 
 section 440.15(2) (providing for payment of TTD “in the case of disability total in character but temporary in quality”). The E/SA’s argument in this regard fails to appreciate the nature and purpose of TPD benefits, and instead imposes a total disability standard on a classification of disability benefits which, by definition, is something less in character. Essentially, the E/SA argues that Claimant must have been capable of earning more than $0 per week during her temporary recuperation from her injuries, because her doctor indicated she was capable of sedentary work activities (which was later reduced to part-time sedentary work activities). Simply being able to work and search for work, however, is not the economic equivalent of an earning capacity.
 
 See Xerographics v. Bender, 558
 
 So.2d 514, 515 (Fla. 1st DCA 1990) (explaining, when worker recovers the physical ability to do some form of work, although limited in kind or amount, and has not yet reached MMI, that worker is considered temporarily and
 
 paHially,
 
 not
 
 totally,
 
 disabled). Furthermore, “simply being able to work and to search for work is not economically equivalent to gainful employment.”
 
 Id.
 
 That is, it does not of itself establish earning capacity.
 

 Because Claimant met her initial burden of proving a causal relationship between her injuries and loss of wages, the E/SA’s assertions as to Claimant’s
 
 potential
 
 (but unsubstantiated) earning capacity in excess of her actual ($0) earnings are more accurately characterized as an affirmative defense such as “voluntary limitation of income” or “deemed earnings,” and do not militate against the JCC’s reliance on the preliminary causal relationship established by Claimant. Once a claimant meets her “initial burden of establishing a prima facie showing of a causal connection between the compensable injury and the subsequent loss of income, the burden shifts to the [E/SA] to prove that during the period in which wage loss benefits are claimed, the claimant refused work or voluntarily limited [her] income.”
 
 Church’s Fried Chicken v. Maloney,
 
 599 So.2d 706, 709 (Fla. 1st DCA 1992). Here, however, the E/SA neither raised nor established a statutory defense to the payment of TPD; rather, it generally averred that Claimant “voluntarily limited her income.”
 

 Affirmative
 
 Defenses to
 
 Payment of TPD
 

 The Workers’ Compensation Law contains express affirmative defenses to TPD benefits, upon which the E/SA carries the burden of persuasion. For example, TPD benefits are not payable if an employee unjustifiably refuses suitable employment, even modified light-duty work, offered or procured for her.
 
 See e.g. Moore v. Servicemaster Commercial Services,
 
 19 So.3d 1147, 1150-51 (Fla. 1st DCA 2009) (holding appropriateness of an offer of modified employment should be evaluated in accordance with the standards set forth in section 440.15(6) and consistent with the Legislature’s intent that the statute be interpreted to facilitate the worker’s return to employment at a reasonable cost to the employer). TPD benefits are also not payable if the employee is terminated from post-injury employment for “misconduct.” § 440.15(4)(e), Fla. Stat. (2007). Furthermore, if an injured employee who is still receiving TPD benefits leaves her post-injury employment “with
 
 *801
 
 out just cause” as determined by the JCC, TPD “shall be payable based on the deemed earnings of the employee as if [she] had remained employed.” § 440.15(7), Fla. Stat. (2007).
 

 Although the express “voluntary limitation of income” defense has been removed from the statute, section 440.15(4)(a) “pins remuneration on what the employee ‘is able to earn’ post-injury.”
 
 Fardella v. Genesis Health, Inc.,
 
 917 So.2d 276, 277 (2005). Additionally, this court has analogized the statutory defense of “refusal of suitable employment” found in section 440.15(6) to a voluntary limitation of income defense.
 
 See Moore,
 
 19 So.3d at 1152 (holding, although an employer is not required to continually reoffer a job to avail itself of statutory defenses based on an unjustified voluntary limitation of income, the employer must establish the continued availability of the job for each applicable period to obtain the continued benefit of the defense). Here, the E/SA neither introduced evidence of a job offered or procured for Claimant, nor otherwise established a quantifiable earning capacity by which the JCC could reduce the TPD benefits otherwise payable during Claimant’s temporary recuperation from her injuries. Accordingly, the JCC did not err in rejecting the E/SA’s “voluntary limitation of income” defense in this regard.
 

 Under the administrative code provisions governing the payment of TPD benefits, the elaims-handling entity is charged with the affirmative obligation of investigating, calculating, and timely paying TPD payments based on the actual earnings of the employee, “even when the employee’s earnings are $0.” Fla. Admin. Code R. 69L-3.01915(2)(a)-(e). The express statutory purpose of this requirement is to “simplify the comparison of the pre-injury average weekly wage with the salary, wages, and other remuneration the employee is
 
 able to earn
 
 post-injury.” § 440.15(4)(a), Fla. Stat. (2007) (emphasis added). Accordingly, here, if the E/SA sought to establish Claimant was “able to earn” an amount greater than her actual earnings, the E/SA, not Claimant, bore the burden of proving so.
 
 See Maloney,
 
 599 So.2d at 709-10 (explaining carrier’s failure to prove extent to which claimant voluntarily limited income precludes application of deemed earnings). Because “voluntary limitation of income” and deemed earnings are affirmative defenses, neither is an element of a prima facie claim for TPD benefits.
 
 See, e.g., Delchamps v. Page,
 
 659 So.2d 341, 343 (Fla. 1st DCA 1995) (holding, once a claimant has satisfied the initial burden of demonstrating a causal connection between the compensa-ble injury and the subsequent loss of income, the burden shifts to the E/C to prove the claimant refused to work or voluntarily limited her income).
 

 The E/SA also alleges error because the JCC found that Claimant’s termination from employment was due to no fault of her own. Although Claimant’s job was eliminated for reasons unrelated to her injury, Claimant was displaced from this employment (and other similar jobs) and its corresponding wages as a result of her inability to perform the functions of the job before, during, and after the mass lay-off. Thus, based on the facts presented here, Claimant’s termination did nothing to change the causes of her wage loss; nor did it create an appreciable wage-earning capacity, as the E/SA suggests. To some extent, the E/SA is arguing that, because
 
 it
 
 could no longer afford to provide Claimant with modified work suitable to her restrictions (a fact which was true before, during, and after the lay-off), it should be excused from paying TPD benefits. This argument overlooks the fact that TPD is a classification of benefits
 
 *802
 
 designed for those circumstances where the accident-employer cannot, or will not, accommodate the recuperating worker who has been displaced from her pre-injury job and wages as a result of a workplace injury. The fact that an employer cannot afford to provide the recuperating worker modified work does not, under the statutory scheme, provide the basis for a defense. Accordingly, because competent substantial evidence supports the JCC’s finding that Claimant did not leave her employment as a result of misconduct or for unjustifiable reasons — both valid legal considerations in determining an employee’s entitlement to TPD benefits under the statute — the E/SA fails to demonstrate error based on the JCC’s consideration of these factors.
 

 Job Search
 

 Prior versions of the Workers’ Compensation Law imposed an express good-faith job search obligation on the part of an injured employee claiming entitlement to TPD benefits. § 440.15(4)(b), Florida Statutes (Supp.1990). Previous statutes also imposed on the employee an affirmative obligation to prove that “his or her inability to obtain employment or to earn as much as was earned at the time of the industrial accident [was] due to physical limitation related to the accident and not because of economic conditions or the unavailability of employment or his or her own misconduct.”
 
 Id.
 

 Effective January 1, 1994, however, the TPD statute was amended to significantly reduce the cumulative total of temporary benefits payable for any accident from 520 weeks to 104. The amended statute also repealed an injured employee’s affirmative obligation to perform a job search as well as the accompanying burden of proving that the inability to
 
 obtain employment
 
 or earn as much as was earned at the time of the injury is due to physical limitations and not economic conditions. Thus, as amended, the statute no longer requires a job search for entitlement to the reduced period of TPD benefits.
 
 See Jefferson v. Wayne Dalton Corp.,
 
 793 So.2d 1081, 1084 (Fla. 1st DCA 2001) (noting that, under amended statute, a job search is no longer a requirement for TPD benefits; rather, a claimant need only prove a causal connection between injury and the loss of income). It follows, then, that an inadequate job search does not establish a
 
 lack
 
 of causation between an injury and a loss of wages, especially where such causation is affirmatively established through medical evidence demonstrating the claimant’s inability to perform her pre-injury job duties.
 
 Ankeny v. Palm Beach County Sch. Bd. Div. of Risk Mgmt.,
 
 648 So.2d 1127, 1128 (Fla. 1st DCA 1994) (holding no evidence supported JCC’s finding of a lack of causation in light of the unrefuted medical testimony establishing the requisite causal relationship and, although the evidence relied on impeached claimant’s testimony regarding work searches, it did not controvert the medical evidence and, thus, did not establish a lack of causation).
 

 The E/SA also argues that the JCC erred in awarding TPD based on his finding that the E/SA failed to advise Claimant of a job-search obligation. Claimant correctly points out, however, that the E/SA’s unwillingness to assist or advise Claimant as to what was expected of her to obtain benefits was but one factor considered by the JCC and, therefore, was not a dispositive factor in the JCC’s determination. Furthermore, any error committed by the JCC in this regard is harmless because, as discussed, a job search is not necessary to establish entitlement to TPD, and the JCC found that Claimant established her entitlement to these bene
 
 *803
 
 fits according to the statutorily-required criteria.
 

 Reemergence of Job Search Notwithstanding Legislative Repeal
 

 Although the Legislature eliminated the job-search requirement for TPD benefits, the concept of a job search has reemerged in case law addressing post-amendment dates of accidents. This reappearance has typically occurred in the context of an employee who has established a post-injury earning capacity by returning to work within her restrictions at a rate that would preclude the payment of TPD benefits, but who later becomes unemployed for reasons unrelated to the injury. In this situation, injured workers have sought to prove a causal relationship between their injuries and the subsequent period of diminished earnings by offering evidence of an unsuccessful job search.
 
 See e.g., Vencor Hosp. v. Ahles,
 
 727 So.2d 968, 971 (Fla. 1st DCA 1998) (reversing award of TPD where employee with restrictions was able to return to work full-time and earn wages greater than or equal to 80% of AWW for nearly two years post-accident, but was terminated for theft and performed no job search to establish causal relationship between injury and post-termination loss of wages).
 
 [1]
 
 Nevertheless, relative to post-1994 cases, the requirement of a job search has not been applied to periods of TPD where the immediate and identifiable post-injury cause of the loss of wages is the injury itself.
 

 Because of the legislative repeal of a job-search requirement, imposing such a requirement on
 
 every
 
 claim for TPD is inappropriate; rather, performing a job search provides an alternate evidentiary means by which an employee may be able to establish disability following a period of successful work.
 
 See Levy,
 
 843 So.2d at 916 (stating unsuccessful job search can be factor in determining causal connection between injury and wage loss, but performance of job search does not itself establish causal relationship). Consequently, our case law suggesting the potential utility of performing a job search under circumstances where an employee cannot establish a direct causal relationship between his injury and loss of wages should not be read to suggest that a job search is required when no such evidence is needed.
 

 The reasoning underlying the notion that a job search might prove disability after a period of non-disability is that, even though the employee’s initial separation from employment (and attendant disruption of wages) is attributable to factors unrelated to the injury, if something additional is shown through subsequent events, she may be able to establish a causal relationship between her
 
 continued
 
 unemployment and the injuries and, if she is unable to make such a showing, the unrelated dismissal remains the cause of the lost wages.
 
 See Ahles,
 
 727 So.2d at 969. Essential to this rationale, however, is the premise that the cause of a claimant’s displacement from employment and wages, once established, remains the cause unless an intervening or superseding cause is established.
 
 See generally IMC Phosphates Co. v. Prater,
 
 895 So.2d 1263, 1271 (Fla. 1st DCA 2005) (“When a primary injury is shown to have arisen out of and in the course of employment, every natural consequence of that injury likewise arises out of the employment unless it is the result of an independent intervening cause which breaks the chain of causation.”). Here, the E/SA failed to establish a competing or
 
 *804
 
 superseding cause of Claimant’s loss of wages and accordingly, there is no basis to impose a job search requirement under the circumstances presented.
 

 Conclusion
 

 Claimant established to the JCC’s satisfaction that the cessation of her pre-injury employment was caused by her inability to perform the job due to her compensable injury, and this displacement from employment resulted in a loss of wages which mathematically qualified her for TPD benefits. The JCC’s findings are supported by competent substantial evidence and the JCC applied the correct legal standard in determining Claimant’s entitlement to TPD benefits. The JCC’s order is therefore AFFIRMED.
 

 PADOVANO, THOMAS, and CLARK, JJ., concur.
 

 [1]
 

 . It was subsequent to
 
 Ahles,
 
 that the Legislature amended section 440.15(4) to create an absolute bar to TPD benefits to those employees terminated from post-injury employment for "misconduct.” § 440.15(4)(e), Fla. Stat. (2003).