WETHERELL, J.,
specially concurring.
Although I fully concur in the majority opinion, I would go further and remand with more specific directions consistent with the discussion below. I write separately because even though the majority opinion remands for the judge of compensation claims (JCC) to determine the amount of temporary partial disability (TPD) benefits due for the period claimed, I am concerned that the opinion may be misconstrued as an approval of the claimant’s position that he is entitled to “full” TPD benefits — calculated at 64% of his average weekly wage — based upon his post-termination earnings of $0. In my view, the record supports only a lesser award.
On remand, the JCC will have to determine the amount of TPD benefits the claimant is due for the period of October 25, 2006 (the date he was fired) to January 16, 2007 (the date he reached maximum medical improvement). To make this determination, the JCC should apply the statutory formula in section 440.15(4)(a), as well as the language in section 440.15(7) which states that “[i]f the employee leaves her or his employment while receiving *1009 temporary partial benefits without just cause as determined by the judge of compensation claims, temporary partial benefits shall be payable based upon the deemed earnings of the employee as if she or he had remained employed.” (emphasis added). I recognize that the employer/carrier (E/C) stipulated to a compensation rate and did not expressly rely on section 440.15(7) as the basis for its “voluntary limitation of income” defense raised below, but the statute uses mandatory language — “shall”.—and, in my view, it plainly applies under the circumstances of this case because the claimant returned to work on light-duty after his injury and he was receiving TPD benefits at the time he was fired for cause unrelated to his injury.
Even if section 440.15(7) was not applicable on remand because it had not been specifically raised as an affirmative defense, the result would be the same because, under the statutory formula in section 440.15(4)(a), TPD benefits are to be based upon the extent of the claimant’s lost earning capacity attributable to the compensable injury. Section 440.15(4)(a) provides that TPD benefits are payable at the rate of 80% of the difference between 80% of the employee’s average weekly wage and “the salary, wages, and other remuneration the employee is able to earn postinjury” (emphasis added). And in Vencor Hospital v. Ahles, 727 So.2d 968, 969 (Fla. 1st DCA 1998), we explained that even without the “deemed earnings” language that was previously included in section 440.15(4)(b), the TPD statute “continues to employ the concept of earning capacity, and not actual earnings, to measure the extent of a partial disability.” See also Fardella v. Genesis Health, Inc., 917 So.2d 276, 277 (Fla. 1st DCA 2005) (explaining that “section 440.15(4)(a), Florida Statutes, continues to allow an E/C to compute TPD benefits based upon what a claimant is able to earn, rather than what he or she actually earns, in that the statute pins remuneration on what ‘the employee is able to earn’ postinjury”).
In this case, the claimant’s wage loss— and, thus, the extent of his partial disability — is comprised of two distinct components: 1) the reduction in his wages resulting from the light-duty restrictions upon his return to work, and 2) the loss of the remainder of his wages upon the termination of his employment for cause. The claimant established the requisite causal connection between his initial wage reduction and the compensable injury, thereby entitling him to TPD benefits in some amount. See Wyeth/Pharma Field Sales v. Toscano, 40 So.3d 795, 803-04 (Fla. 1st DCA 2010); Arnold v. Florida’s Blood Ctrs., Inc., 949 So.2d 242, 247 (Fla. 1st DCA 2007) (“To be entitled to [TPD] benefits, ‘[a] claimant must show a causal connection between his or her injury and a subsequent wage loss.’ ”) (quoting Interim Servs. v. Levy, 843 So.2d 915, 916 (Fla. 1st DCA 2003)). However, once the E/C established an intervening cause for the claimant’s wage loss (ie., the termination of the claimant’s employment for cause unrelated to his injury), the causal chain was broken and the burden shifted to the claimant to show “something additional” in order to establish a causal connection between the compensable injury and the additional, post-termination wage loss. Toscano, 40 So.3d at 802-03; see also Stewart v. CRS Rinker Materials Corp., 855 So.2d 1173, 1177 (Fla. 1st DCA 2003) (“Even though a claimant may be terminated from his or her employment for insubordination, the claimant may still be entitled to benefits if he or she satisfies the burden of demonstrating that the injury contributed to the wage loss after the termination.”) (emphasis in original); Vencor Hospital, 727 So.2d at 971 (Benton, J., concurring) (“ ‘Whatever temporary period of unem *1010 ployment might be attributable solely to unrelated dislocation would logically end upon proof of a prima facie injury connection by continued wage loss after a good faith job search by one whose employment status [capacity to earn wages] has been ... altered by a compensable impairment which affects his competitive position in the labor market.’ ”) (quoting Whalen v. U.S. Elevator, 486 So.2d 670, 671 (Fla. 1st DCA 1986)). The claimant failed to meet this burden of proof because, even though he testified that he unsuccessfully “applied everywhere for work,” see Toscano, 40 So.3d at 803 (explaining that “performing a job search provides an alternate evidentia-ry means by which an employee may be able to establish disability following a period of successful work”), the JCC found that testimony not credible and insufficient to establish that the claimant actually conducted a good faith and extensive job search. Thus, under the circumstances of this case, although the claimant’s failure to conduct a job search was not fatal to his entitlement to TPD benefits, it is relevant to the amount of TPD benefits the claimant is due.
In Vencor Hospital, we reversed an award of post-termination TPD benefits because the JCC failed to take into account the claimant’s “substantial earning capacity” as reflected by her post-injury, pre-termination work for the employer. See 727 So.2d at 969. Likewise, in this case, the record establishes that the claimant was “able to earn” and, in fact, did earn income after his injury and that it was only after he was fired (which, the record establishes, was unrelated to his injury) that his earnings were reduced to $0. Accordingly, in my view, consistent with sections 440.15(4)(a) and (7), the claimant’s TPD benefits for the period at issue should be calculated on remand based upon his post-injury, pre-termi-nation average weekly wage rather than his post-termination earnings of $0. Any other result would be unjust under the circumstances of this case.