900 So.2d 664 (2005)
A. DUDA & SONS, INC. and CNA Claims Plus, Appellants,
v.
Joseph A. KELLEY, Appellee.
No. 1D04-1279.
District Court of Appeal of Florida, First District.
April 7, 2005.
Rehearing Denied May 6, 2005.
*665 Pamela L. Foels; Zimmerman, Kiser & Sutcliffe, P.A., Orlando, for Appellants.
Randall T. Porcher, West Palm Beach and Cord Byrd; Gonzalez & Porcher, P.A., Lake Worth, for Appellee.
HAWKES, J.
Appellants (E/C) argue the Judge of Compensation Claims (JCC) erred by *666 awarding payment for Claimant's ulcer condition because Claimant's industrial accident was not the major contributing cause of the ulcer, and erred in her application of the "employee refuses employment" provisions of section 440.15(7), Florida Statutes (2001), when awarding temporary partial disability (TPD) benefits. We agree, and accordingly, affirm in part, reverse in part, and remand.

I. FACTUAL & PROCEDURAL HISTORY

Claimant injured his shoulder in a work-related accident in 2001, which ultimately necessitated surgery. Prior to this, Claimant was prescribed various medications for an unrelated back injury, which he continued to take after his shoulder surgery.

A. The Ulcer Condition
While being treated for his shoulder injury, Claimant was diagnosed with a perforated ulcer, which required hospitalization for ten days. Claimant sought benefits for this condition as a manifestation of his shoulder injury. An independent medical evaluation (IME) was performed as to the perforated ulcer. The IME physician testified "there was a milieu that the patient set up for himself with his alcohol and smoking, and then, once the medications he was using, caused a catastrophic perforation of the ulcer."[1] The physician specifically testified that medication Claimant had been taking for both the unrelated back injury and his compensable shoulder injury could contribute to his ulcer condition. However, the physician could not opine, within a reasonable degree of medical certainty, as to the major contributing cause of Claimant's ulcer.

B. Claimant's Work Opportunities
Eventually, Claimant was placed on light duty work status, and the employer, having no light duty work available itself, offered to place Claimant in a job at Goodwill. Claimant did not report to Goodwill until almost two weeks past the start date. He worked one day, then stopped reporting for work. Claimant testified shoulder pain was part of the reason he did not return, but the primary reason was that he had to "mess with people's dirty shoes," and was bored. Goodwill's secretary testified work would have continually been available to Claimant from his initial reporting date until the E/C notified Goodwill that Claimant would no longer report.
Shortly after Claimant's one and only day of work at Goodwill in April 2003, he was put on a no-work status for three days. During the three day "no work" period, Claimant accepted work with a neighbor at the same rate of pay he received at Goodwill. That job lasted approximately one and one-half months. For one week thereafter, while Claimant still did not report to Goodwill, he unsuccessfully sought alternative work with friends and the employer.
In June of 2003, Claimant underwent surgery for his ulcer. Although physicians' records indicate Claimant was released with restrictions from this surgery, none of the records indicate Claimant could not return to work at Goodwill. The record is silent as to whether Claimant looked for alternative work or contacted the employer for employment other than with Goodwill after his release.
In early August, Claimant sought to return to light duty work with the employer. However, none was available. In mid-September, *667 the E/C sent Claimant a letter reminding him he could return to his job at Goodwill on September 29, 2003. Claimant did not report for work until October 1, 2003, and from that date through October 22, 2003, Claimant worked sporadically. Specifically, Claimant worked only one full shift, worked partial shifts on some days, and sometimes would not report for work at all, during this time period. The record indicates work continued to be available for Claimant at Goodwill until November 7, 2003, the last record date for which Claimant was scheduled to work.

C. The JCC's Order
The JCC found Claimant's medications "worked synergistically" to cause the ulcer, and awarded compensation for as long as the ulcer remained directly and proximately linked to the industrial injury. Although the JCC found Claimant's reasons for not reporting to work were inadequate, TPD benefits were awarded based on no earnings, actual earnings, or deemed earnings, depending on the time period for which benefits were awarded. The JCC erred in finding the ulcer condition compensable and in awarding any TPD benefits when Claimant refused suitable employment.

II. THE MAJOR CONTRIBUTING CAUSE STANDARD

Claimant argues he was not required to prove his workplace injury was the major contributing cause of his ulcer, because the ulcer is a "resulting manifestation" of his original workplace injury, as provided by section 440.09(1), Florida Statutes (2001).[2] In making this argument, Claimant mistakenly relies on Claims Mgmt., Inc. v. Drewno, 727 So.2d 395 (Fla. 1st DCA 1999).
In Drewno, we did deem it unnecessary for claimants to prove that their original workplace injury was the major contributing cause of a "manifestation." See id. at 398. The E/C in Drewno conceded the psychiatric injury at issue was a "manifestation" contested under section 440.09(1), Florida Statutes, and limited their argument to that section. The E/C took the position that the claimant's burden of proof to establish compensability of a "manifestation" was to show the original workplace injury was the major contributing cause of a resulting "manifestation." We expressly decided the case "[a]s so framed . . .," and disagreed with the E/C that it was necessary to prove the original workplace injury was the major contributing cause of a "manifestation." Id. at 397-398.
Two facts distinguish this case from Drewno. First, the E/C here does not concede the contested injury was a "manifestation." Second, Claimant's ulcer condition is not a "manifestation," as that term is defined in the workers' compensation statute.

A. Definition of Manifestation
The definition of "manifestation" can be found within the definition of "injury" in section 440.02(18), Florida Statutes (2001). A manifestation is "such diseases or infection as naturally or unavoidably result from" the compensable work place injury. See id. (emphasis added); Drewno, 727 *668 So.2d at 398. No competent, substantial evidence exists that Claimant's stomach ulcer was the natural or unavoidable result from his shoulder injury, nor did the JCC make such a finding.[3]
If manifestation were to be defined as broadly as the JCC did here, as merely a synergistic relationship, it would render section 440.09(1)(a), relating to subsequent injuries, and section 440.09(1)(b), relating to pre-existing conditions, meaningless. Obviously, every subsequent injury or compensable pre-existing injury must have some synergistic relationship with the original injury. Thus, under the JCC's reasoning, every injury would qualify as a "manifestation" if any relationship to the original workplace injury could be shown. Therefore, it would have never been necessary for a claimant to prove the original workplace injury was the major contributing cause of any related injury, until the "major contributing cause" language was added to section 440.09(1), effective October 1, 2003.[4] The JCC erred by finding the ulcer compensable as a resulting manifestation.

B. Compensability Under Some Other Provision
Since Claimant's ulcer is not a manifestation, it can only be compensable if it qualifies under some other provision of Chapter 440. The only other provisions that would provide compensation are if the ulcer qualified as a "subsequent injury" under section 440.09(1)(a), Florida Statutes (2001), or if the ulcer qualified for treatment as a pre-existing condition under section 440.09(1)(b), Florida Statutes (2001).
Both of these sections require medical evidence that the original workplace injury is the major contributing cause of the need for treatment or entitlement to benefits for the related injury or disease. See §§ 440.09(1)(a) & (b), Fla. Stat.; see also Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 640-41 (Fla. 1st DCA 1996) (affirming JCC's denial of benefits where no medical expert opined, within a reasonable degree of medical certainty, that workplace leg injury was major contributing cause of subsequent heart attack).
Here, according to the medical testimony, Claimant's pre-existing risk factors (namely, his tobacco and alcohol use) combined with his medications, both related and unrelated to his compensable injury, caused the ulcer. Claimant's IME physician could not testify, within a reasonable degree of medical certainty, as to the major contributing cause of Claimant's ulcer. Because no competent, substantial evidence supports a finding that the shoulder injury is the "major contributing cause" of the perforated ulcer as required by either section 440.09(1)(a) or section 440.09(1)(b), Florida Statutes, the JCC's compensability determination is reversed.

III. VOLUNTARY LIMITATION OF INCOME

The E/C also argues the JCC erred in awarding compensation when Claimant refused suitable employment. If an injured employee refuses suitable employment, that employee "shall not be entitled to any compensation during the continuance of such refusal" unless, in the JCC's opinion, refusal is justified. See § 440.15(7), Fla. Stat. (emphasis added); Pyram v. Marriott Int'l, 687 So.2d 351 (Fla. 1st DCA 1997).
*669 The legislature clearly intends to strongly encourage injured workers, who are capable, to return to the workplace. The method of encouragement chosen by the legislature was to deny all compensation when the claimant refuses suitable employment. The sanction applies only during the continuance of the refusal.
When Claimant accepts suitable employment, the compensation the E/C must pay Claimant is determined pursuant to the formula set forth in section 440.15(4)(a), Florida Statutes (2001). The formula sets TPD compensation as "equal to 80 percent of the difference between 80 percent of the employee's average weekly wage and the salary, wages, and other remuneration the employee is able to earn, as compared weekly . . . ." Id.
Calculating compensation pursuant to the statutory formula for the hours in which Claimant worked requires the following steps: (1) The record shows Claimant's average weekly wage (AWW) was $1,072.06; (2) 80% of Claimant's AWW is $857.65; (3) Claimant earned $206.00 per week if he worked a full week (forty hours at $5.15 an hour) with Goodwill; (4) Subtracting Claimant's maximum Goodwill earnings of $206.00 from $857.65 (80% of the AWW), equals $651.65; (5) 80% of $651.65 equals $521.32 as the amount the E/C is obligated for weekly, pursuant to the formula.[5] The obligation for the E/C in TPD benefits equates to $13.03 per hour based on a forty hour week (40 x $13.03 = $521.32) for each hour Claimant accepts suitable employment. Claimant would also receive his $5.15 per hour from Goodwill.
Here, Claimant accepted suitable employment sometimes and refused suitable employment at other times. The JCC found Claimant's reasons for refusing suitable employment were inadequate. Since Claimant received hourly wages from Goodwill, and the legislature only mandates compensation be denied for the "continuance" of refusal, we conclude an hourly basis is the most appropriate measure of determining when suitable employment was accepted or refused. This means Claimant should receive compensation for the hours he worked and not receive compensation for the hours he refused work.
Record evidence shows Claimant had the opportunity to work full-time, forty hours weekly, at Goodwill from March 26, 2003[6] through April 9, 2003,[7] June 1June 6, 2003,[8] and June 18, 2003November 7, 2003.
*670 These three periods of time equate to a potential of 936 hours Claimant could have worked for Goodwill. The record reveals Claimant actually worked only eighty-two hours and eight minutes in total at Goodwill. While the employer itself had no work available from June 1 through June 6, 2003, and from August 5 through September 28, 2003, the record establishes that nothing precluded Claimant from continuing to work at Goodwill. Moreover, there is no obligation for the E/C to continuously remind Claimant of his employment opportunities with Goodwill. Once the JCC determined Claimant refused suitable employment for certain time periods, the JCC was required to deny all compensation for those periods. See § 440.15(7).
Instead of complying with the statutory mandate of section 440.15(7), Florida Statutes, the JCC erroneously "deemed earnings"[9] for days Claimant did not work, requiring the E/C to pay $104.24 for each day (eight hours x $13.03). Claimant's refusal to accept suitable employment precluded any entitlement to compensation. Thus, the JCC erred by awarding any compensation for hours when Claimant refused suitable employment.
Since the E/C's liability for TPD compensation is only for the eighty-two hours and eight minutes that Claimant accepted suitable employment during the time periods at issue, Claimant is entitled to only $1,070.19 (eighty-two hours and eight minutes actually worked x $13.03).
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
WEBSTER and PADOVANO, JJ., concur.
NOTES
[1] Claimant admitted to being a smoker for thirty years, and an occasional drinker for the past twenty years.
[2] The relevant part of section 440.09(1), Florida Statutes (2001), provides: "The employer shall pay compensation or furnish benefits required by this chapter if the employee suffers an accidental injury or death arising out of work performed in the course and scope of employment. The injury, its occupational cause, and any resulting manifestations or disability shall be established to a reasonable degree of medical certainty and by objective medical findings."
[3] An example of a "manifestation" is where a psychological injury, such as a depressive disorder, results naturally or unavoidably from a serious physical injury.
[4] See 2003 Ch.2003-412, § 6, Laws of Fla.
[5] By statute, Claimant's weekly benefits are capped and cannot exceed 66.66% of his AWW or $714.64 per week. See § 440.15(4)(a). Thus, if Claimant accepted forty hours of suitable employment, he would only be entitled to $508.64 from the E/C as TPD compensation, in addition to the $206.00 he would earn from Goodwill. However, since Claimant never worked a full week, the E/C never receives the $12.68 reduction that would be necessary after applying the formula and statutory cap.
[6] Because Claimant's job at Goodwill was not to start until March 26, 2003, we affirm the award of TPD benefits for March 24-25, 2003.
[7] Claimant was placed on a "no work" status from April 10-13, 2003. However, Claimant began working for his neighbor on April 12, 2003 and continued to do so until May 31, 2003 (or seven weeks). According to Claimant, he worked a total of 239 hours for his neighbor. Because Claimant was on a "no work" status on April 10th and 11th, we affirm the TTD award for those two days. Additionally, because Claimant worked for his neighbor, we affirm the award of TPD benefits for April 12, 2003May 31, 2003.
[8] Claimant was hospitalized for his ulcer condition from June 7-17, 2003. The award of TTD benefits for this period is supported by competent, substantial evidence. See Myers v. Sherwin-Williams Paint, Co., 838 So.2d 608, 612 (Fla. 1st DCA 2003).
[9] The JCC appears to have gleaned this concept from a prior version of section 440.15(4). Prior to 1994, Chapter 440 contained a "deemed earnings" provision "which had enabled the courts to attribute earning capacity to a worker who was underemployed . . . ." Vencor Hosp. v. Ahles, 727 So.2d 968, 969 (Fla. 1st DCA 1998); see § 440.15(4)(b), Fla. Stat. (1993). Although the 1994 revision removed the "deemed earnings" provision, the current statute continues to employ the "earning capacity" concept. See § 440.15(4)(a), Fla. Stat. (providing TPD benefits are computed using salary, wages, and other remuneration employee is able to earn); see also Vencor Hosp., 727 So.2d at 969. But this is only to compute the E/C's TPD financial obligation.