HAWKES, C.J.
 

 In this workers’ compensation appeal, we are asked to address the applicability
 
 *1149
 
 of the common-law concept of sheltered employment to periods of temporary partial disability (TPD); and the forfeiture of benefits under the defense found in section 440.15(6), Florida Statutes (2007). Here, the Judge of Compensation Claims (JCC) rejected Claimant’s argument that the concept of “sheltered employment” should apply and denied TPD benefits, along with penalties, interest, costs, and attorney’s fees, pursuant to section 440.15(6), based on Claimant’s unjustified refusal of suitable employment.
 

 We also reject Claimant’s sheltered employment argument. In regard to the requested TPD benefits, Claimant argues the JCC failed to consider the changes in material facts occurring over the course of her claimed period of disability. The record reveals three distinct periods framed by the operative facts. During the first period, Claimant remained on the Employer’s payroll but refused suitable employment until she received physical therapy. During the second, Claimant had been terminated but still had not received physical therapy. And during the third, Claimant had completed physical therapy but remained unemployed, and under doctor’s restrictions. The record does not support the JCC’s application of the section 440.15(6) defense to this last period. Accordingly, we affirm in part, reverse in part, and remand for subsequent proceedings.
 

 Background
 

 Claimant, a commercial housekeeper, suffered a compensable injury to her right (dominant) shoulder. Claimant underwent surgery, and was placed on no-work status for approximately one week. On July 17, 2007, Claimant’s authorized orthopedist returned Claimant to work with significant restrictions relative to her right upper extremity and recommended three weeks of physical therapy. The Employer, as part of its return-to-work program, sent Claimant a letter offering a light-duty job, dusting with only the left hand. Claimant called the Employer and advised she would not return to work until she received the recommended physical therapy, she was still in pain, and she could not perform the job because it was too difficult. On August 17, 2007, because Claimant failed to show up for work or call, the Employer terminated Claimant’s employment and requested the return of all uniforms.
 

 Claimant eventually underwent physical therapy which she completed on October 4, 2007. Her doctor placed her at maximum medical improvement (MMI) and assigned a permanent impairment rating. Prior to reaching MMI, Claimant secured a job with another employer to begin on November 16, 2007.
 

 Claimant filed a petition for TPD benefits from July 25, 2007, through November 15, 2007. The E/C denied such benefits, alleging Claimant had voluntarily limited her income.
 

 At hearing, Claimant raised several arguments in avoidance of the E/C’s defense, including:
 

 1) the job was too difficult for her to perform and thus, her refusal was justified;
 

 2) the job was too easy and was, thus, “sheltered employment” that did not meet the elements of the defense in section 440.15(6); and
 

 3) she was terminated from her employment on August 17, 2008, and thus, she could not have refused employment during the period where there was no offer.
 

 The JCC found the modified position was a legitimate offer of suitable employment made pursuant to the Employer’s return-to-work program and was not “sheltered employment.” Based on these find
 
 *1150
 
 ings, the JCC denied all requested TPD benefits due to Claimant’s unjustified refusal of suitable employment, the affirmative defense found in section 440.15(6), Florida Statutes (2006).
 

 “Sheltered Employment”
 

 As grounds for reversal, Claimant argues the one-arm duster job was “sheltered employment” because it was light of effort and responsibility and laden with rest and comfort and thus, benefits should be awarded. This argument raises the question as to why Claimant would also advance, as she does in another point on appeal, the difficulty of the job as a justifiable basis for her refusal. The determination of whether a particular job is considered “sheltered employment” is factual in nature and, thus, subject to the competent substantial evidence standard of review.
 
 See Wal-Mart Stores, Inc. v. Liggon,
 
 668 So.2d 259, 271-72 (Fla. 1st DCA 1996). The JCC’s findings of fact must be upheld if any view of the evidence and its permissible inferences supports them.
 
 See Ullman v. City of Tampa Parks Dep’t,
 
 625 So.2d 868, 873 (Fla. 1st DCA 1993).
 

 The sheltered employment doctrine does not have a life of its own; rather, it merely serves to vindicate the legislatively imposed parameters of permanent and total disability (PTD).
 
 Liggon,
 
 668 So.2d at 271. If an employer creates a job for an employee merely as a litigation tactic in a workers’ compensation case, such a job cannot be said to constitute “gainful employment” that would defeat a PTD claim.
 
 See id.
 
 (citing
 
 Shaw v. Publix Supermarkets, Inc.,
 
 609 So.2d 683, 686 (Fla. 1st DCA 1992)). Reasonable job modification for the purpose of accommodating an injured or partially disabled employee will not place the job outside of the definition of gainful employment.
 
 Id.
 
 at 271. Pervasive federal law now requires employers to make reasonable accommodations for their disabled employees.
 
 Id.
 
 (citing 42 U.S.C. § 12112(a)).
 

 The application of the concept of “sheltered employment” in the manner urged by Claimant is antithetical to the express legislative intent contained in section 440.015 (stating it is the intent of the Legislature that the Workers’ Compensation Law be interpreted to facilitate the worker’s return to gainful reemployment at a reasonable cost to the employer), and is at odds with the affirmative defense provided for in section 440.15(6) (providing forfeiture of benefits where employee unjustifiably refuses an offer of employment suitable to his or her capacity). Moreover, the Legislature, by
 
 including
 
 wages earned in sheltered employment as a basis for the calculation of TPD benefits, has expressed its intent as to the applicability of the concept of sheltered employment relative to TPD benefits — it is not applicable.
 
 See
 
 § 440.15(4)(a), Fla. Stat. (2007) (“The amount determined to be the salary, wages, and other remuneration the employee is able to earn shall in no case be less than the sum actually being earned by the employee, including earnings from sheltered employment.”).
 

 To the extent a temporary offer of employment is perceived to be the result of gamesmanship on the part of the employer, section 440.15(6) allows a JCC to excuse an injured worker from accepting such an offer if the JCC finds the job unsuitable, or finds justification in the worker’s stated reason for refusing the job. Because the statutory scheme provides a full remedy for a worker who is offered temporary employment which is borne of bad faith or gamesmanship, there is no reason to resort to the common-law concept of “sheltered employment” in such situations. Rather, the appropriateness of an offer of modified employment should be evaluated in accordance with the standards
 
 *1151
 
 set forth in section 440.15(6) and consistent with the Legislature’s intent that the statute be interpreted to facilitate the worker’s return to employment at a reasonable cost to the employer.
 

 We can think of no legislative purpose that would be served by penalizing an employer that has implemented a return-to-work program, even if part of the purpose of the program is to facilitate a reduction in the cost of workers’ compensation'— a legitimate and textual goal of the Act.
 
 See
 
 § 440.015, Fla. Stat. (2006). Moreover, we can think of no legitimate purpose that would be advanced by awarding disability benefits to a worker who declines an appropriate and suitable offer of employment because the job, although suitable and appropriate to her temporary restrictions, is simply “too easy” — a plea that would find few, if any, sympathetic ears in the labor market.
 

 For the foregoing reasons, we affirm the JCC’s finding that the modified dusting position was part of a legitimate return-to-work program, and not sheltered employment.
 

 Refusal of Suitable Employment
 

 On appeal, Claimant argues the denial of TPD benefits was legal error because the JCC, instead of considering the totality of circumstances, denied TPD benefits based on one factor, the unjustified refusal of suitable employment. We disagree. It is the intent of the Legislature that the Workers’ Compensation Law be interpreted to facilitate the worker’s return to gainful reemployment at a reasonable cost to the employer.
 
 See
 
 § 440.015, Fla. Stat. (2006). If an injured employee refuses an offer of suitable employment, she shall not be entitled to any compensation during the continuance of such refusal unless in the opinion of the JCC such refusal is justifiable.
 
 See
 
 § 440.15(6), Fla. Stat. (2006). “The legislature clearly intends to strongly encourage injured workers, who are capable, to return to the workplace.”
 
 A. Duda & Sons, Inc. v. Kelley,
 
 900 So.2d 664, 669 (Fla. 1st DCA 2005). “The method of encouragement chosen by the Legislature was to deny
 
 all
 
 compensation when the claimant refuses suitable employment.”
 
 Id.
 

 Claimant’s argument that the JCC erred by denying benefits by finding an unjustified refusal of suitable employment, and disregarding the “totality” of the remaining circumstances, fails to appreciate that section 440.15(6) is an affirmative defense. Thus, even if Claimant is otherwise entitled to TPD benefits, the successful assertion of this affirmative defense bars Claimant’s entitlement for the relevant periods.
 
 See
 
 § 440.15(6), Fla. Stat. (2006).
 

 In denying TPD benefits for the period when the offer of employment was extant, the JCC focused on the E/C’s affirmative defense based on section 440.15(6) and found, as required by the statute, the Employer offered employment suitable to Claimant and her restrictions, and Claimant unjustifiably refused such employment.
 

 The suitability of the offered employment and the reasonableness of the justifications provided by Claimant as the basis for her refusal are issues of fact which will not be disturbed in the presence of competent substantial evidence supporting such findings.
 

 TPD Benefits after Termination of Employment
 

 Nevertheless, in accordance with the plain language of section 440.15(6), the affirmative defense based on an unjustified refusal of an offer of employment applies only during the continuance of the refusal.
 
 See
 
 § 440.15(6), Fla. Stat. (2006);
 
 see also Kelley,
 
 900 So.2d at 669. Here, the facts establish Claimant was offered the modified duster job on July 24, 2007, Claimant
 
 *1152
 
 told the Employer she was waiting to receive physical therapy before returning to work, and Claimant was terminated on August 17, 2007.
 

 Although an employer is not required to continually reoffer a job to avail itself of statutory defenses based on an unjustified voluntary limitation of income, the employer must establish the continued availability of the job for each applicable period to obtain the continued benefit of the defense.
 
 See Hyatt Regency Westshore v. Robinson,
 
 629 So.2d 1088, 1089 (Fla. 1st DCA 1994) (interpreting analogous voluntary limitation of income provision found in section 440.15(3)(b)2., Florida Statutes (1990)). Voluntary limitation of income caused by the refusal to accept a suitable job does not permanently foreclose the right to indemnity benefits.
 
 See, e.g., Arnold v. Fla. Blood Ctrs., Inc.,
 
 949 So.2d 242, 248 (Fla. 1st DCA 2007);
 
 Lamazares v. Rinker S.E. Materials Corp.,
 
 519 So.2d 34 (Fla. 1st DCA 1987);
 
 Bado v. Canteen Corp.,
 
 513 So.2d 1364 (Fla. 1st DCA 1987).
 

 At first blush, it would seem that, as a matter of law, Claimant’s refusal of the modified-dusting position would cease upon the termination of her employment and the resulting rescission of the offer of suitable employment. Here, however, Claimant made it clear that she would not return to work until after she received physical therapy — a course of conduct not justified by any medical testimony. Accordingly, we do not agree with Claimant’s assertion that, as a matter of law, her refusal of the modified dusting job ceased concurrently with the Employer’s termination of her employment.
 

 Claimant’s testimony is competent substantial evidence of her refusal to accept suitable employment through the completion of physical therapy (October 4, 2007); and accordingly, the JCC’s denial of TPD through October 4, 2007, is affirmed.
 

 Because, however, the JCC failed to make any findings with regard to Claimant’s entitlement to TPD benefits after Claimant’s refusal of employment ceased, and before she returned to work on November 16, 2007, we reverse. On remand, the JCC should determine whether Claimant proved, based on the evidence presented, entitlement to TPD benefits in accordance with the standards set forth in section 440.15(4), Florida Statutes (2006) from October 5, 2007, through November 15, 2007.
 

 Penalties, Interest, Costs, and Attorney’s Fees
 

 In her final point on appeal, Claimant argues because the JCC erred in denying TPD benefits, he also erred in denying penalties, interest, costs, and attorney’s fees (PICA). Because we reverse and remand the JCC’s denial of TPD benefits subsequent to October 4, 2007, we also reverse and remand the JCC’s denial of PICA pertaining to this period. If the JCC finds Claimant has met her statutory burden of proof and establishes entitlement to TPD for that period, PICA should also be awarded. Nevertheless, because we affirm the JCC’s denial of TPD from July 25, 2007, through October 4, 2007, the denial of PICA pertaining to this period is likewise, affirmed.
 

 The JCC’s denial of TPD benefits from July 25, 2007 through October 4, 2007, and PICA pertaining thereto, is AFFIRMED; the JCC’s denial of TPD benefits from October 5, 2007, through November 15, 2007, and PICA pertaining thereto is REVERSED and REMANDED for further proceedings consistent with this opinion.
 

 BENTON and LEWIS, JJ., concur.