# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4424

_____

EMPLOYBRIDGE and GALLAGHER
BASSETT SERVICES, INC.,

    Appellants,

    v.

VIVIANA LLANES RODRIGUEZ,

    Appellee.

_____

On appeal from an order of the Judge of Compensation Claims.
Stephen L. Rosen, Judge.

Date of Accident: May 11, 2016.

September 7, 2018

PER CURIAM.

The Employer and Carrier in this workers' compensation case appeal an order awarding temporary disability benefits after the Judge of Compensation Claims found that Claimant Viviana Llanes Rodriguez's refusal to accept suitable employment offered by her employer was justifiable under § 440.15(6), Florida Statutes. We reverse because the record does not support the conclusion that Claimant's refusal was justifiable.

REVERSED.

B.L. THOMAS, C.J., and OSTERHAUS, J., concur with opinions; BILBREY, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

B.L. THOMAS, C.J., concurring with opinion.

I concur in the result, but I would hold that under section 440.15(6), Florida Statutes, an injured employee cannot refuse suitable reemployment, unless the refusal has some "plausible nexus" to the workplace injury, or the employee comes forward with persuasive evidence that the refusal is necessary to protect the employee's health or safety. The overarching goal of the Worker's Compensation Act regarding injured workers is to ensure the "worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. (2016); *Moore v. Servicemaster Commercial Servs.,* 19 So. 3d 1147, 1151 (Fla. 1st DCA 2009) ("It is the intent of the Legislature that the Workers' Compensation Law be interpreted to facilitate the worker's return to gainful employment at a reasonable cost to the employer."); *A. Duda & Sons, Inc. v. Kelley,* 900 So. 2d 664, 669 (Fla. 1st DCA 2005) ("The legislature clearly intends to strongly encourage injured workers, who are capable, to return to the workplace."). This legislative intent is strongly enforced by the forfeiture of temporary disability benefits, when the employee refuses gainful employment offered by the employer. "The method of encouragement chosen by the legislature was to deny *all* compensation when the claimant refuses suitable employment." *Id.* (emphasis in original).

Here, the Employer met its burden of persuasion that it had offered Claimant suitable modified-duty work under section 440.15(6), Florida Statutes, such that, once Claimant refused this suitable work, she was no longer eligible for temporary partial disability payments: "If an injured employee refuses employment

2

suitable to the capacity thereof, offered to or procured therefor, *such employee shall not be entitled to any compensation at any time during the continuance of such refusal* unless at any time in the opinion of the judge of compensation claims such refusal is *justifiable.*" § 440.015(6), Fla. Stat. (emphasis added). The Employer suggests that this court should apply the rationale of our prior decision in *ESIS/ACE American Insurance Company v. Kuhn* in determining the proper authority of a judge of compensation claims to decide whether such a refusal is "justifiable." 104 So. 3d 1111, 1113 (Fla. 1st DCA 2012). I agree.

In *Kuhn*, this court correctly construed the discretion of a judge of compensation claims to award an advance payment of compensation under section 440.20(12), Florida Statutes, holding that the legislative intent could not have been simply to allow a claimant to obtain the advance payment for a reason unrelated to a workplace injury:

> We are dealing, however, with a statutory framework in Chapter 440 whose principal purpose is to address medical and related financial needs arising from workplace injuries. *In context, the type of interest that is furthered by an advance under section 440.20(12)(c)(2) must at least have some plausible nexus to this purpose.* A request for a $2000 advance, simply as an undifferentiated financial cushion with no relationship to the provision of medical or related care, does not have such a connection. Indeed, absent this nexus, awarding a $2000 advance could, in the extreme, become merely an automatic judicial act whenever such an advance is requested; we see no basis in the statutory framework for this result.

*Id.* at 1114-15 (emphasis added).

Here, there is an even more persuasive rationale than in *Kuhn* to require a "plausible nexus" to Claimant's work-related injury before allowing Claimant to refuse suitable employment, because of the statutory forfeiture of benefits to penalize an unjustified refusal. In cases interpreting section 440.15(6), Florida Statutes,

3

such a requirement would properly limit the discretion of a judge of compensation claims, consistent with the statute's legislative intent to incentivize an injured employee's return to employment at a reasonable cost to the employer. Thus, I concur in the result but would hold that an employee must present persuasive evidence to demonstrate that a refusal of suitable employment has a plausible nexus to the workplace injury or is necessary to protect the employee's health or safety.

OSTERHAUS, J., concurring with opinion.

I vote to reverse the JCC's order because Claimant offered ordinary, manageable, and self-imposed commuting limitations rather than reasonable justifications for refusing the suitable work offered by her Employer.

I.

In 2013, Claimant and her husband became employed with the Employer in the Employer's Tampa office. But soon thereafter they were assigned to work at a client company in Largo.[*] They then moved to Largo to be closer to work.

In 2016, Claimant tripped over a box and fell on her right knee. The accident required medical treatment and resulted in a compensable claim. The authorized doctors assigned work restrictions that prevented Claimant from performing her regular job duties. An Employer representative testified that its client companies, like the one in Largo, typically engage in industrial or manufacturing work and do not have light-duty work available. But for a short time, the Employer was able to provide clerical-type work for Claimant in Largo. After five days of work in Largo, the Employer offered Claimant a similar clerical position in its Tampa office. But she declined.

Claimant filed a petition for benefits seeking temporary partial disability (TPD) benefits. The Employer and Carrier

---

[*] The Employer also had a branch office in Largo that serviced the client from across the street.

4

responded with affirmative defenses including voluntary limitation of income and unjustifiable refusal of suitable employment pursuant to section 440.15(6). After a final hearing, the JCC awarded TPD benefits, justifying Claimant's refusal to accept the Tampa job by citing the difficult commute between Largo and Tampa. This appeal followed.

## II.

The workers' compensation statute, section 440.15(6), Florida Statutes, generally doesn't permit an injured employee to refuse suitable employment offered by an employer and still receive compensation. § 440.15(6), Fla. Stat.; *see also A. Duda & Sons, Inc. v. Kelley*, 900 So. 2d 664, 668 (Fla. 1st DCA 2005). But an employee can refuse suitable work and receive compensation if "in the opinion of the judge of compensation claims such refusal is justifiable." § 440.15(6), Fla. Stat. Because of the wide discretion given to JCCs in this statute, we will only reverse if the JCC's finding amounts to an abuse of discretion, or isn't supported by competent substantial evidence. *Ullman v. City of Tampa Parks Dep't*, 625 So. 2d 868, 873 (Fla. 1st DCA 1993) (recognizing the appellate court's role "to guard against fanciful or arbitrary abuse of discretion in workers' compensation cases, . . . by scrutinizing JCC findings under the light of the basic rule requiring competent substantial evidence in support of [its] findings"). *See also Moore v. Servicemaster Comm. Servs.*, 19 So. 3d 1147, 1151 (Fla. 1st DCA 2009) (noting that "the reasonableness of the justifications provided by Claimant as the basis for her refusal [is an issue] of fact which will not be disturbed in the presence of competent substantial evidence supporting such findings").

In this case, there is no dispute that the Employer offered Claimant a suitable job in Tampa. Claimant is able to perform the light-duty work within the restrictions assigned from her knee injury. But the JCC decided that Claimant could refuse the work and receive workers' compensation benefits instead, because of difficulties associated with the 17-mile commute. The JCC credited the following hardships as justifying her refusal to work:

> I find it is unreasonable to expect this particular claimant to go to work in the Tampa office of the employer with her language limitations, her driving limitations, a singular

5

vehicle in the family mainly used by her husband during his odd work hours, no familiarity with public transportation, suggestion of dependence on other family members to drive from Tampa to Largo to pick up the claimant, take her back to Tampa, and then back to Largo at the end of the workday . . . .

I understand from these findings that Claimant would have to solve some logistical hurdles, or rely on public transportation in order to get to the job offered to her in Tampa. I also understand from the JCC's findings that Claimant did not investigate her public transportation options, even though there are bus stops near her home and work. The commuting "limitations" identified by the order describe rather ordinary and manageable commuting difficulties that cannot justify her decision to refuse a good job in favor of receiving public benefits, especially when her commuting options haven't been investigated. Under the Workers' Compensation Act, the refusal to work a suitable job must be "justifiable." § 440.15(6), Fla. Stat. The Workers' Compensation statute is bent on "strongly encourag[ing] injured workers, who are capable, to return to the workplace." *A. Duda & Sons, Inc.*, 900 So. 2d at 669. And "[i]t is the intent of the Legislature that the Workers' Compensation Law be interpreted to facilitate the worker's return to gainful employment at a reasonable cost to the employer." *Moore*, 19 So. 3d at 1150-51. It follows that an injured employee cannot simply identify ordinary commuting obstacles and self-imposed commuting limitations as the basis for refusing a suitable job, especially where conventional commuting options haven't been investigated.

Speaking only Spanish, for instance, is not a reasonable justification for Claimant's refusal to work a suitable job. Many Spanish-speaking workers in Florida can drive or ride to work every day. Indeed, Claimant herself has obtained a drivers' license and drives locally around her house. I don't see how Claimant's lack of English-language proficiency prevents her from commuting to work, or investigating the Tampa-area's public transportation options. The other limitations identified in the order also don't justify her refusal. That Claimant might have to work out sharing a car with her husband, rely on rides from family members, carpool with others, or investigate and use public transportation are

6

unremarkable "limitations." Again, many workers must coordinate with their families to solve commuting-related inconveniences and obstacles, or use car-pooling, ride-sharing, or public transportation options. Offered a suitable job, Claimant cannot refuse it simply on the basis of ordinary, manageable, or self-imposed limitations.

The JCC's order also mentions the possibility of a physical, injury-related justification for refusing employment as follows:

> [I]t is unreasonable to expect this particular claimant to go to work in the Tampa office of the employer with . . . [her] unrefuted testimony that she has pain from her knee to her hip when sitting for long periods of time[.]

To the extent that the order bases Claimant's justifiable refusal decision on commute-related leg pain, however, competent substantial evidence does not support the finding. Claimant never asserted that pain prevented her from commuting to the job in Tampa. In fact, time-and-time again Claimant's position in her testimony, trial memorandum, and other argument was that her refusal arose not from a medical condition, but from her lack of transportation. She stated unequivocally that she could work the Tampa job if she had a ride. The only testimony in the record that can be read to support a leg-pain rationale for refusing to work came in response to the JCC's question: "When you drive around your house to the grocery store – small errands – how does your right knee feel?" Claimant answered: "I cannot do it for too, too long because it hurts all the way up here." That Claimant expressed a vague complaint of leg pain when she drives around doing errands in her car for "too, too long" (no medical testimony bolstered this complaint), is not support for the conclusion that she cannot commute to the suitable job that is available to her in Tampa.

Finally, I do not support my colleague's preference for deciding this case based upon a new, court-made rule that "an injured employee cannot refuse suitable reemployment, unless the refusal has some 'plausible nexus' to the workplace injury, or the employee comes forward with persuasive evidence that the refusal is necessary to protect the employee's health or safety." Rather, I think we should follow the statute. Section 440.15(6) only limits the JCC's consideration where an injured employee refuses

7

suitable employment by requiring that such refusal be "justifiable." The statute doesn't say "*medically* justifiable," or some such thing. This means that JCCs may take account of non-injury-related factors tending to justify an employee's refusal to accept employment. It is easy to imagine job-offer scenarios in which a JCC might reasonably find justifiable refusal, even though the employee's refusal isn't related to the workplace injury, health, or safety. This could occur, for example, if the job requires a two hundred-mile commute; requires a single-parent employee with young kids to work 24-hour shifts; requires an offender-probationer employee to violate the terms of his or her probation; requires an employee to violate sincerely held religious or moral beliefs; or requires an employee to complete impossible tasks for non-injury-, health-, or safety-related reasons (e.g., requiring a non-reader to read legal documents, an employee without a license to drive a delivery truck, etc.). The statute doesn't forbid the JCC from considering factors like these in addition to those related to the workplace injury or the protection of health and safety.

And so, I think we needn't decide this case on the basis of a court-made rule that doesn't hew to the statute. Rather, I vote to reverse the JCC's order because Claimant offered ordinary, manageable, and self-imposed commuting limitations rather than reasonable justifications for refusing the suitable work offered by her Employer.

BILBREY, J., dissenting with opinion.

The Employer/Carrier (E/C) in this workers' compensation case appeal an order by the Judge of Compensation Claims (JCC) awarding temporary disability benefits after finding that Claimant's refusal of suitable employment was justifiable pursuant to section 440.15(6), Florida Statutes. Because the JCC's conclusions in his opinion are supported by record evidence, I would affirm the order. Since the majority substitutes its view of the facts in place of the broad discretion afforded the JCC by the Legislature, I respectfully dissent.

### Factual Summary

The JCC found the following facts. In 2013, Claimant, a woman in her mid-fifties, emigrated with her husband from Cuba

8

to Tampa. At the time the JCC entered the challenged order in October 2017, Claimant did not understand or speak English "in any significant degree." Claimant and her husband obtained employment with the Employer, an employee staffing company. Although hired in the Employer's Tampa office, in March 2014 they were assigned to work with a client company, Hit Productions, in Largo.[1] A few weeks later, the couple moved to a residence in Largo five to six miles from the Hit Productions facility. Claimant testified that the reason for the move was to be closer to work and avoid a 35 to 40 mile roundtrip commute involving driving on the interstate and over a cross-bay bridge.

Claimant's job at Hit Productions involved operating a machine to print on items such as pens and key chains. On the date of accident, Claimant tripped over a box and fell on her right knee, resulting in a compensable claim and requiring medical treatment. The authorized doctors assigned work restrictions that prevented Claimant from returning to her regular job. An Employer representative testified that the Employer's client companies engage in light industrial or manufacturing work and typically do not have light-duty work available. The Employer was, however, able to provide clerical-type work for Claimant in its Largo office. But this job lasted just five days after which the Employer offered Claimant a similar position in its Tampa office. The Employer offered this position to Claimant several times, but she declined.

Claimant filed a petition for benefits seeking temporary partial disability (TPD) benefits. The E/C responded with affirmative defenses including voluntary limitation of income and unjustifiable refusal of suitable employment pursuant to section 440.15(6). The matter went to a final hearing at which an Employer representative testified that Claimant had recently contacted her seeking light-duty work in the Employer's Largo office and was told none was available, and also that Claimant declined any work in the Tampa office "because of transportation."

---

[1] The Employer also had a branch office in Largo that serviced only Hit Productions and was located across the street from its facility.

9

The representative also testified that the Tampa job remained available.

After considering all of the evidence, the JCC found that Claimant and her husband had one car which the husband used to drive to Tampa to his job as a truck driver. The husband's job included both day and night shifts. The JCC accepted Claimant's testimony that if she drove her husband to Tampa when he worked the day shift she would need to drop him off by 4:00 a.m. and then wait at the Employer's Tampa office (where the offered employment was) for four hours until it opened. The JCC also accepted Claimant's testimony that due to her inexperience as a driver, Claimant's husband did not want her driving their car from Largo to Tampa during regular business hours and that Claimant was not familiar with the Interstate and other freeways. The JCC also noted that the roads Claimant would have to drive from her Largo home to Employer's Tampa office can be confusing. The JCC also noted Claimant's testimony that she drives short, local distances only and experiences pain in her knee and hip when sitting for a long period of time. The JCC concluded that, under the circumstances, Claimant "certainly could not have developed driving skills so as to drive from Largo to Tampa and back with interstate and high-speed travel and unfamiliar roads/highways."

On the issue of public transportation Claimant testified that she was aware of a bus stop outside the entrance to her mobile home park, but that she was not sure whether the bus would take her to Tampa. Claimant also testified that the bus schedule was in English, so she could not read it. The JCC also noted that there was no evidence that Claimant made any efforts to drive to Tampa or obtain alternative transportation. Nonetheless, the JCC ultimately found:

> [I]t is unreasonable to expect this particular claimant to go to work in the Tampa office of the employer with her language limitations, her driving limitations, a singular vehicle in the family mainly used by her husband during his odd work hours, no familiarity with public transportation, suggestion of dependence on other family members to drive from Tampa to Largo to pick up the claimant, take her back to Tampa, and then back to Largo

10

at the end of the workday, the claimant's unrefuted testimony that she has pain from her knee to her hip when sitting for long periods of time, and the claimant's willingness to work for the Largo office of the employer until light duty . . . ran out.

As a result, the JCC concluded that Claimant's refusal of the Tampa job was justified and that she had "not voluntarily limited her income by refusing to do this job even though it may have been within her physical limitations medically" and awarded TPD benefits for the relevant period. This appeal by the E/C followed.

Analysis

Section 440.15(6), Florida Statutes, provides, in relevant part:

EMPLOYEE REFUSES EMPLOYMENT. — If an injured employee refuses employment suitable to the capacity thereof, offered to or procured therefor, such employee shall not be entitled to any compensation at any time during the continuance of such refusal **unless at any time in the opinion of the judge of compensation claims such refusal is justifiable**.

(emphasis added).

In construing a statute, courts must first look to its plain language. *See Perez v. Rooms To Go,* 997 So. 2d 511, 512 (Fla. 1st DCA 2008). Here, the statute's plain language gives JCCs broad discretion in determining whether an employee's refusal of suitable employment is justifiable. In *Ullman v. City of Tampa Parks Department*, 625 So. 2d 868, 873 (Fla. 1st DCA 1993) (en banc), this court stated that role of the court "must be to guard against fanciful or arbitrary abuse of discretion in workers' compensation cases, and we will continue to do so by scrutinizing JCC findings under the light of the basic rule requiring competent substantial evidence in support of such findings." The en banc court further stated in *Ullman* that the JCC's "findings must be sustained if permitted by any view of the evidence and its permissible inferences." *Id.*

11

As the majority notes, there is no dispute concerning the suitability of the offered employment with respect to Claimant's ability to perform the job, even with her assigned physical restrictions. Thus, the remaining question is whether the JCC's findings in support of his opinion that Claimant's refusal of the position was justifiable are supported by competent substantial evidence (CSE).

I respectfully submit that here the majority substitutes its view of the facts in place of the JCC in contravention of the authority granted the JCC under section 440.15(6). The statute's plain language refers to a JCC's "opinion" regarding the justifiability of a claimant's refusal of suitable employment which, as discussed, must be based on CSE. Here, the JCC's opinion as to these factors were based on Claimant's testimony, which the JCC could accept or reject in his role as trier of fact.[2] The majority imposes on the JCC restrictions the statute simply does not include, is contrary to our role as set forth in *Ullman*, and is contrary to the JCC's position as trier of fact. *See City of W. Palm Beach Fire Dep't v. Norman*, 711 So. 2d 628, 629 (Fla. 1st DCA 1998) (holding "the [JCC] determines credibility, resolves conflicts in the evidence, and may accept the testimony of one [witness] over that of several others.").[3]

---

[2] Although in one instance the JCC cited his personal experience with the route Claimant would have to navigate to the Tampa job, there was sufficient additional CSE to support the JCC's findings.

[3] Chief Judge Thomas supports the E/C's argument that this court should go further and adopt the "plausible nexus" standard similar to the one this court has developed in cases involving advances under section 440.20(12), Florida Statutes. I respectfully submit that we are correct not to do so. Adopting such a standard would require us to encroach on the Legislature's prerogative to provide, as it has for over forty years, for a JCC's broad discretion to consider all of the factors cited by a claimant for refusing suitable employment, regardless of whether there is a direct connection between the reason or reasons for the refusal and a claimant's employment or injury. If the Legislature wants to

Consider, for instance, if the proposed substituted employment required a daily commute from Largo to Jacksonville. I have no doubt that most appellate judges would agree that it would be reasonable for the Claimant to decline that daily commute and for a JCC to find her refusal justifiable under section 440.15(6).[4] Conversely, if the E/C had offered evidence of a company shuttle that would take Claimant to and from work after a short ride each day, I think any appellate judge would agree that CSE would not support a JCC finding that the refusal of substituted employment under those conditions was reasonable.

What is too far a commute such that refusal of the substituted employment is reasonable? I think it depends on a number of factors best left to the sound discretion of the fact finding JCC. In cases like this one that could go either way, I think appellate judges should defer to the JCC. If the JCC has too much discretion under section 440.15(6), I respectfully submit that it is the Legislature which should impose limits on the JCC's broad discretion, not an appellate court.

### Conclusion

Because the JCC's findings in support of his opinion that Claimant's refusal of suitable employment are supported by record evidence, I would affirm the challenged order. Since the majority reverses, I respectfully dissent.

---

impose criteria that a JCC may consider when forming an opinion as to whether a claimant's refusal of employment is justifiable, it certainly can do so, but it is not for this court to rewrite the statute. "Work[ers'] compensation is entirely a creature of statute and must be governed by what the statutes provide, not by what deciding authorities feel the law should be." *J.J. Murphy & Son, Inc., v. Gibbs*, 137 So. 2d 553, 562 (Fla. 1962).

[4] If we adopted the "plausible nexus" standard, presumably a claimant would have to commute to any suitable employment offered anywhere in the world since the unduly burdensome commute and associated expenses would have no plausible connection to the workplace injury.

_____

Juliana L. Curtis and Barbi L. Feldman of Vecchio, Carrier, Feldman & Johannessen, P.A., Lakeland, for Appellants.

Michael J. Winer of Law Office of Michael J. Winer, P.A., Tampa, for Appellee.