# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-4064
_____

MJM ELECTRIC, INC./OCIP and
SEDGWICK CMS,

    Appellants,

    v.

WILLIAM SPENCER,

    Appellee.

_____

On appeal from an order of the Judge of Compensation Claims.
Ellen H. Lorenzen, Judge.

Date of Accident:  August 1, 2017.

July 29, 2019

PER CURIAM.

In this workers' compensation case, the Employer/Carrier (E/C) challenge the Judge of Compensation Claims' order awarding William Spencer medical care and temporary partial disability (TPD) benefits. We affirm, without discussion, six of the seven issues raised in this appeal. At the same time, we reverse the JCC's rejection of the E/C's affirmative defense that Spencer voluntarily limited his income by refusing suitable employment after the date the Employer terminated his employment, and we remand the case for further proceedings.

## I

TPD benefits are payable to an injured employee if he has not reached overall maximum medical improvement from the injury and the medical conditions resulting from the injury create restrictions on the employee's ability to work. § 440.15(4)(a), Fla. Stat. (2017); *see also Wyeth/Pharma Field Sales v. Toscano*, 40 So. 3d 795, 799 (Fla. 1st DCA 2010). The employee's prima facie burden of proving TPD entitlement includes showing a causal connection between loss of employment at the pre-injury wages and the workplace injury. *Id.* (citing *Photo Elec. Corp./WPEC v. Glick*, 432 So. 2d 164, 165 (Fla. 1st DCA 1983)). Once the injured employee persuades the JCC that this causal connection exists, the burden shifts to the E/C to demonstrate affirmatively a superseding or intervening cause of the wage loss, such as voluntary limitation of income or deemed earnings. *See, e.g., Church's Chicken v. Anderson*, 112 So. 3d 545, 547 (Fla. 1st DCA 2013); *Toscano*, 40 So. 3d at 803.

Here, the E/C do not dispute the JCC's finding that Spencer met his prima facie burden of proving entitlement to TPD benefits for his August 1, 2017, workplace shoulder injury. Instead, the E/C argue that the JCC erred as a matter of law when she rejected their affirmative defense of a voluntary limitation of income after August 16, 2017, the termination date of Spencer's employment. In making this argument, the E/C rely primarily on Spencer's alleged refusal of suitable employment under section 440.15(6). This statutory provision states that an employee who refuses suitable employment is not entitled to indemnity benefits, such as TPD benefits, "at any time during the continuance of such refusal unless at any time in the opinion of the [JCC] such refusal is justifiable." S*ee also, Moore v. Servicemaster Commercial Servs.*, 19 So. 3d 1147 (Fla. 1st DCA 2009). In her order, the JCC found that Spencer voluntarily limited his income by refusing suitable employment up until the date his employment was terminated, but that after this date, the defense no longer applied because the E/C stopped offering suitable employment. Here the JCC erred.

## II

Mr. Hott, the Employer's service manager and shop superintendent, hired Spencer through the union hall to work as a

journeyman electrician. Spencer testified that, on the morning of August 1st, he reported his workplace injury to his direct supervisor, Mr. Carney, and then went home. He stayed home for the next two days and when he returned to the workplace on the third day, he was taken to see Dr. Owi, an authorized physician. According to Mr. Hott, Mr. Carney spoke with Spencer on August 2nd, but when he heard nothing from him the next day, he and the on-site safety employee tried calling Spencer three times that day without success. On August 8th, Spencer called Mr. Carney and told him that he was not coming in to work.* Mr. Hott testified that he called the union hall on the 14th and was told that they had not heard from Spencer.

At one point, Mr. Hott received an email from the doctor listing Spencer's work restrictions. He tried calling Spencer on August 10th and 14th, but when Spencer did not answer, he left voice mail messages advising him that light duty work was available and that he needed to come to work. He did not text or mail Spencer any offer of light duty employment. In his testimony, Mr. Hott described the light-duty job available to Spencer as one that fell within his work restrictions. Additionally, he stated that the Employer would have been able to accommodate whatever restrictions were assigned short of no-duty. And, according to Mr. Hott, the Employer would have kept Spencer in a modified "transitional" duty position "continuously until that was wrapped up and they said, 'hey, this guy can never work again'" or until he was released to go back to work.

On August 15th, the on-site safety manager sent an email to payroll indicating that Mr. Polanco, the assigned safety manager, had not heard anything from Spencer, including whether he attended a follow-up appointment. The Employer mailed Spencer a statement terminating his employment for job site abandonment on August 16th. As of the date of the final hearing, Spencer had not returned to work and had not looked for work. He testified that he did not believe he has been able to work safely since the accident

---

* Other testimony suggests that Spencer sent a text on August 7th stating that he had a doctor's appointment and would not be in.

3

and that he "can't work" because "there's no such thing as light duty on a job like [he] was working on." Although he anticipated retiring, he did not plan to do so for at least another six to nine months.

Spencer testified further that he did not really know whether the Employer had called him after his accident, but when he sees a phone number "that's not dialed in" he usually does not answer it because he has "gotten a lot of harassing calls before." He also does not retrieve voice mail unless he recognizes the telephone number; nevertheless, he testified at the final hearing that no voice mail message was left on his phone. He stopped calling because he was getting depressed over the situation. He believed that Mr. Hott called the union hall, but he personally did not call for many days because he was "into a pretty deep state of depression after [what] Dr. Owi said."

In the appealed order, the JCC found that the Employer offered Spencer suitable light duty work within his restrictions and that Spencer refused this offer when he "chose not to listen to his voice mail messages and did not himself contact the employer about returning to work." Based on these factual findings, the JCC concluded "as a matter of law" that Spencer was not entitled to TPD from the date of accident through August 16th. Nevertheless, she awarded TPD benefits from August 17th and continuing because she found the E/C did not meet their burden of showing available suitable employment *after* August 16th.

III

The E/C here had the burden of proving their affirmative defense of a voluntary limitation under section 440.15(6) (refusal of suitable employment). *See Moore*, 19 So. 3d at 1151. To the extent this issue turns on resolution of the facts, our standard of review is competent substantial evidence (CSE); to the extent it involves an interpretation of law, the standard is de novo. *See Benniefield v. City of Lakeland*, 109 So. 3d 1288, 1290 (Fla. 1st DCA 2013).

The E/C argue that the JCC erred as a matter of law because she assumed that the E/C were obliged to make repeated offers of suitable employment. In *Moore*, this court held that an employer

4

is not required to "continually reoffer a job to avail itself of [this] statutory defense." 19 So. 3d at 1152. But at the same time, the court emphasized the employer must, nevertheless, "establish the continued availability of the job for each applicable period to obtain the continued benefit of the defense." *Id.*

*Moore* involved a factual situation very similar to the instant case. There, the employer offered the claimant a modified job within her assigned work restrictions, but she indicated that she wanted to complete physical therapy before returning to work. *Id.* at 1151-52. Approximately one month later, the employer terminated her employment. *Id.* at 1152. As the *Moore* court explained:

> At first blush, it would seem that, as a matter of law, Claimant's refusal of the modified-dusting position would cease upon the termination of her employment and the resulting rescission of the offer of suitable employment. Here, however, Claimant made it clear that she would not return to work until after she received physical therapy — a course of conduct not justified by any medical testimony. Accordingly, we do not agree with Claimant's assertion that, as matter of law, her refusal of the modified dusting job ceased concurrently with the Employer's termination of her employment.

*Id.* According to this analysis, termination will result in rescission of an *offer* of suitable employment, but a claimant may nevertheless be found to continue to refuse suitable *available* employment. In other words, the fact that suitable employment is terminated is not determinative of the defense. Instead, when the injured employee's employment is terminated, a three-part inquiry applies: (1) did the employer establish the continued availability of suitable employment after termination; (2) did the injured employee continue to refuse suitable employment after termination; and (3) was the refusal justified?

The E/C argue that the JCC erred because her ruling is based solely on her finding that the Employer did not make continuous offers of suitable employment after August 16th. But here the JCC's findings *suggest* she considered more than whether repeated

5

offers were made. For example, the JCC found that (1) Spencer was offered no medical care after August 21st and thus could not have returned to Dr. Owi to discuss any change in restrictions; (2) Spencer's independent medical examiner assigned work restrictions on January 12, 2018; (3) the Employer was unlikely to have employed Spencer in any light duty position after August 21st, the date Dr. Owi released Spencer to return to full duty work; and (4) Mr. Hott did not testify that Spencer would have been eligible to return to light duty work after termination if he had just called. Although the JCC concluded her analysis with reference to the lack of continuous offers after August 16th, these other findings arguably relate to the continuing *availability* of light duty employment.

Although it seems telling that the JCC found that the E/C did not show that light duty work "even existed" after August 16th, she also acknowledged Mr. Hott's testimony that suitable employment would have continued if Claimant had returned to work. Her finding that the Employer was not likely to offer light duty work after Spencer's release to full duty on August 21st seems speculative based on this record and, even if supported by the evidence, would not explain an award beginning August *17th*. The same may be said about her finding that Spencer was given work restrictions *after* January 12, 2018. But at the end of the day, it is simply not certain whether the JCC based her ruling on more than the lack of continuous offers of employment after the date of termination.

Because the JCC's analysis and application of the law is not clearly in accord with the statute and the relevant case law, we REVERSE the JCC's rejection of the E/C's affirmative defense of refusal of suitable employment under section 440.15(6) and REMAND for reconsideration with findings addressing: (1) the continued availability of suitable employment; (2) Spencer's continued refusal of such suitable employment; and (3) any justification for a continued refusal.

RAY, C.J., and BILBREY and JAY, JJ., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Robert B. Griffis of Jones, Hurley & Hand, P.A., Orlando, for Appellants.

Bill McCabe of William J. McCabe, P.A., Longwood, and Dana L. Greenbaum of Dana L. Greenbaum, P.A., St. Petersburg, for Appellee.